**BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: SHALE OIL ANTITRUST LITIGATION | MDL NO. |

**MEMORANDUM IN SUPPORT OF PLAINTIFF FOOS, ET AL.'S MOTION TO TRANSFER AND CENTRALIZE RELATED ACTIONS FOR CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS**

Plaintiffs Matthew E. Foos, Andrew A. Hund, Michael B. Ackerman, Jarrod Johnson, and Mackey and Sons Inc. ("Movants") respectfully submit this memorandum of law in support of their Motion to Transfer and Centralize Related Actions for Consolidated or Coordinated Pretrial Proceedings.[1] To date, eleven related cases have been filed in two districts each alleging that eight of the nation's biggest shale oil producers have conspired to coordinate, and ultimately constrain, domestic shale oil production, which has had the effect of fixing, raising, and maintaining the price of petroleum-based products such as gasoline, diesel fuel, commercial marine fuel or heating oil, in and throughout the United States. Only the District of New Mexico possesses a clear factual and geographical nexus to the allegations in the Complaints. Transfer and centralization of the related actions to the District of New Mexico will advance the efficient resolution of this litigation and serve the convenience of the parties and witnesses. The district has experience with multidistrict antitrust litigation and provides convenient access to evidence and witnesses. Based on all these considerations, the Related Actions belong in the Land of Enchantment.

**FACTUAL AND PROCEDURAL BACKGROUND**

This litigation concerns shale oil used to produce petroleum-based products such as gasoline,

---

[1] Plaintiffs in *Foos et al v. Permian Resources Corp. et al*, Case No. 1:24-cv-00361-MLG-LF (U.S. District Court – District of New Mexico (Albuquerque)).

diesel fuel, commercial marine fuel, or heating oil sold in the U.S. ¶ 2.[2] Today, shale oil comprises almost two-thirds of the onshore production of crude oil in the United States. ¶ 3. The independent shale producers ("Independents") are companies that primarily focus on the exploration, development, and production of domestic shale resources. ¶ 7. Defendants Permian Resources Corp. f/k/a Centennial Resource Development ("Centennial"), Chesapeake Energy Corporation ("Chesapeake"), Continental Resources Inc. ("Continental"), Diamondback Energy, Inc. ("Diamondback"), EOG Resources, Inc. ("EOG"), Hess Corporation ("Hess"), Occidental Petroleum Corporation ("Occidental"), and Pioneer Natural Resources Company ("Pioneer"), collectively "Defendants," are among the largest Independents. ¶ 8.

Plaintiffs allege that between 2017 and 2023, Defendants met and communicated regularly with each other, and with OPEC, to coordinate their collective oil output in response to market conditions. ¶¶ 60-79, 93. Following these meetings, Defendants' representatives consistently made public statements confirming these discussions and the exchange of confidential information. ¶¶ 11, 60-79. Following the COVID-19 pandemic in 2021, demand for petroleum-based products such as gasoline, diesel fuel, commercial marine fuel or heating oil, and thereby oil prices rose. ¶ 84. This rise was further exacerbated by the Russian invasion of Ukraine in late February 2022. ¶ 88. The rising crude oil prices provided prime market conditions for Defendants to increase production. ¶¶ 13, 104-108.

Inexplicably, rather than expanding production, Defendants departed from their historical practice and rational independent self-interest by limiting their domestic shale production growth during a time of high demand. ¶¶ 14, 105, 119. We know now that the output limitation resulted from an unlawful conspiracy. As the Federal Trade Commission detailed in a recent Complaint, at least one of the Defendants' CEOs attempted explicitly to "organize tacit (and potentially express) coordination of capital investment discipline and oil production levels in the Permian Basin and across the United

---

[2] All "¶" references are to paragraphs in the Complaint filed in the *Foos* action. Case No. 1:24-cv-00361-MLG-LF, Dkt. 1 (U.S. District Court – District of New Mexico (Albuquerque)).

States,"[3] all "at the expense of U.S. households and businesses."[4] Indeed, "rather than seeking to compete against OPEC and OPEC+ through independent competitive decision-making, [Pioneer's CEO]'s goal in recent years at Pioneer has been to align U.S. oil production with OPEC and OPEC+ country output agreements."[5] The Federal Trade Commission issued an order banning that CEO from occupying an Exxon board seat in order to limit the likelihood of coordination in crude oil markets.[6]

Defendants' agreement to limit their respective shale production volumes has had the effect of fixing and/or stabilizing at an artificially high-level U.S. (and global) crude oil prices, which in turn fixed and/or stabilized prices of petroleum-based products such as gasoline, diesel fuel, commercial marine fuel or heating oil in the United States at an artificially high level. ¶ 15. Defendants' cartel is a per se unlawful restraint of trade under numerous state antitrust and competition laws. ¶ 111. Plaintiffs and the Classes suffered substantial harm from the supra-competitive prices they paid for petroleum-based products such as gasoline, diesel fuel, commercial marine fuel, or heating oil as a direct and proximate result of the cartel to constrain domestic production of shale oil in the United States. ¶¶ 16, 120-124.

Beginning on January 12, 2024, at least eleven class action complaints have been filed regarding the alleged conspiracy to coordinate, and ultimately constrain, shale oil production in the United States:

- Nine cases in the Nevada District Court consisting of *Western Cab Company v. Permian Resources Corp. et al*, No, 2:2024cv00401 (February 28, 2024); *MacDowell et al v. Permian Resources Corp., et al*, No. 2:2024cv00325 (February 15, 2024); *Beaumont v. Permian Resources Corp. et al,* No. 2:2024cv00298 (February 12, 2024); *Olsen Santillo v. Permian Resources Corp. et al*, No. 2:2024cv00279 (February 8, 2024); *Mellor v. Permian Resources Corp. et al*, No. 2:2024cv00253 (February 6, 2024); *Courtmanche et al v Permian Resources Corp. et al*, No.

---

[3] Federal Trade Commission, Complaint in the Matter of Exxon Mobil Corporation, ¶ 22, *available at* *https://www.ftc.gov/system/files/ftc_gov/pdf/2410004exxonpioneercomplaintredacted.pdf* (last visited May 8, 2024).
[4] *Id.* ¶ 1.
[5] *Id.* ¶ 3.
[6] Federal Trade Commission, Decision and Order in the Matter of Exxon Mobil Corporation, *available at* *https://www.ftc.gov/system/files/ftc_gov/pdf/2410004exxonpioneerorderredacted.pdf* (last visited May 8, 2024).

2:2024cv00198 (January 29, 2024); *These Paws Were Made for Walkin' LLC v. Permian Resources Corp. et al*, No. 2:2024cv00164 (January 24, 2024); *Andrew Caplen Installations LLC et al v. Permian Resources Corp. et al,* No. 2:2024cv00150 (January 22, 2024); and *Rosenbaum et al v. Permian Resources Corp. et al*, No. 2:2024cv00103 (January 12, 2024). Cases No. 2:2024cv00103, 2:2024cv00150, 2:2024cv00198, 2:2024cv00164, 2:2024cv00279, and 2:2024cv00298, and 2:2024cv00401 have been consolidated under 2:24-cv-00103-MMD-MDC. All cases are currently pending before Chief Judge Miranda M. Du.

- Two cases in the New Mexico District Court consisting of *Foos et al v. Permian Resources Corp. et al*, No. 1:24-cv-00361-MLG-LF (April 15, 2024) currently pending before the Hon. Matthew L. Garcia, and *Brown et al v. Permian Resources Corp. et al*, No. 1:24-cv-00430-LF-KK (May 6, 2024) currently pending before Magistrate Judge Laura Fashing.

The Related Actions (*see* Schedule of Related Actions submitted herewith) involve overlapping Defendants and each alleges that Defendants conspired to coordinate and constrain shale oil production in the United States in violation of federal and state antitrust and consumer protection laws. Each of the Related Actions seeks treble damages, injunctive relief and other relief as appropriate on behalf of all persons and entities who purchased petroleum-based products made from oil such as gasoline, diesel fuel, commercial marine fuel or heating oil, from distributors in the United States from January 1, 2021, until Defendants' anticompetitive conduct cased. The Related Actions are also in a similar procedural posture as all are in the very earliest stages of litigation and no dispositive motions have been filed and discovery has yet to commence.

**ARGUMENT**

I. **CENTRALIZATION OF THE RELATED ACTIONS IS WARRANTED UNDER 28 U.S.C. § 1407**

"When civil actions involving one or more common questions of fact are pending in different

districts," this Panel may transfer such actions "to any district for coordinated or consolidated pretrial proceedings," if transfer would serve "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). Because these requirements are met here, the Panel should transfer the Related Actions to a single district for coordinated or consolidated pretrial proceedings.

### A. The Related Actions Involve Common Questions of Fact

For purposes of Section 1407, common questions of fact exist where multiple actions assert similar "core factual allegations" and "can be expected to focus on a significant number of common events, defendants, and/or witnesses." *In re Unumprovident Corp. Sec., Derivative & "ERISA" Litig.*, 280 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003).

The Related Actions satisfy the requirements of Section 1407(a) because they involve common defendants and overlapping conduct, and the Panel routinely finds that centralization is appropriate for cases involving alleged violations of antitrust laws. *See, e.g., In re Qualcomm Antitrust Litig.*, 273 F. Supp. 3d 1373, 1375 (J.P.M.L. 2017) ("Plaintiffs in all the actions listed on Schedule A assert similar claims for violations of federal and state antitrust and consumer protection laws."); *In re Visa/Mastercard Antitrust Litig.*, 295 F. Supp. 2d 1379, 1380 (J.P.M.L. 2003) ("All six actions share factual questions relating to allegations that Visa and MasterCard's 'Honor All Cards' policy violates the Sherman Antitrust Act."); *In re Polyester Staple Antitrust Litig.*, 259 F. Supp. 2d 1376, 1377 (J.P.M.L. 2003) (cases arising out of alleged price fixing shared common factual questions); *In re Parcel Tanker Shipping Servs. Antitrust Litig.*, 296 F. Supp. 2d 1370, 1371 (J.P.M.L. 2003) ("All actions share factual questions relating to the existence, scope and effect of an alleged conspiracy to fix the price of international shipments of liquid chemicals in the United States.").

Each Related Action is also brought on behalf of a nationwide class and asserts antitrust claims under federal law and state laws. *See In re Cotton Yarn Antitrust Litig.*, 336 F. Supp. 2d 1383, 1384 (J.P.M.L. 2004) ("All actions share factual questions relating to the existence, scope and effect of an alleged

5

conspiracy to fix the price of cotton yarn in the United States and/or to allocate the U.S. cotton yarn market and customers."); *In re Domestic Airline Travel Antitrust Litig.*, 140 F. Supp. 3d 1344, 1345 (J.P.M.L. 2015) ("All of the actions assert overlapping putative nationwide classes of direct purchasers of domestic airfare, and all the actions assert antitrust violations of Section 1 of the Sherman Act."); *In re K-Dur Antitrust Litig.*, 176 F. Supp. 2d 1377, 1378 (J.P.M.L. 2001) (similar).

The Related Actions therefore share one or more common questions of fact under Section 1407(a).

**B.    Centralization Would Serve the Convenience of Parties and Witnesses and Promote the Just and Efficient Conduct of The Related Actions**

Because the Related Actions' factual allegations and legal claims largely overlap, transfer would serve "the convenience of parties and witnesses and . . . promote the just and efficient conduct" of the Related Actions. 28 U.S.C. § 1407(a). There are already eleven actions pending in two districts. *See e.g.*, *In re New York City Municipal Securities Litigation*, 439 F.Supp. 267 (J.P.M.L. 1977) (centralizing ten actions pending in two districts). Given the likelihood that additional cases will be filed, centralization under section 1407 now would be the most efficient means of proceeding. *See, e.g., In re: Edward H. Okun I.R.S. |1031 Tax Deferred Exch. Litig.*, 609 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009) ("[D]enial of either of Wachovia's transfer motions could engender delay, as the Panel may be asked to revisit the question of Section 1407 centralization. Centralizing these actions now under Section 1407 should streamline resolution of this litigation to the overall benefit of the parties and the judiciary."); *In re: AndroGel Prod. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014) (rejecting alternatives to centralization because they "would delay the resolution of the common core issues in this litigation").

Centralization is also appropriate because the plaintiffs in the Related Actions will undoubtedly pursue substantially similar testimony, documents, and other evidence from Defendants, but the ten actions are proceeding in two separate districts in different states each with distinct groups of Plaintiffs' counsel. Centralizing the Related Actions will have "the salutary effect of placing all actions in this

6

docket before a single judge who can formulate a pretrial program that ensures that pretrial proceedings will be conducted in a manner leading to the just and expeditious resolution of all actions to the overall benefit of the parties." *In re Cook Med., Inc., Pelvic Repair Sys. Prod. Liab. Litig.*, 949 F. Supp. 2d 1373, 1375 (J.P.M.L. 2013); *In re Auto Body Shop Antitrust Litig.*, 37 F. Supp. 3d 1388, 1390 (J.P.M.L. 2014) ("Transfer under Section 1407 will offer the benefit of placing all related actions before a single judge who can structure pretrial proceedings to accommodate all parties' legitimate discovery needs while ensuring that common witnesses are not subjected to duplicative discovery demands.")

Moreover, because the Related Actions have many common questions of fact and law, they will also have many overlapping pretrial issues, including the adequacy of the claims and allegations. And because each Related Action is a class action, centralization will eliminate the possibility of inconsistent rulings on class certification from courts in two districts. *See, e.g., In re: Zimmer Durom Hip Cup Prod. Liab. Litig.*, 717 F. Supp. 2d 1376, 1377 (J.P.M.L. 2010) ("Centralization under Section 1407 will eliminate duplicative discovery, prevent inconsistent pretrial rulings on discovery and other issues, and conserve the resources of the parties, their counsel and the judiciary.").

For these reasons, the Panel should centralize the Related Actions in the interests of justice and efficiency.

## II. THE PANEL SHOULD TRANSFER THE RELATED ACTIONS TO THE DISTRICT OF NEW MEXICO (ALBUQUERQUE)

In determining the appropriate transferee district, the Panel considers a variety of factors, including: (1) whether the district "offers a forum that is both convenient and accessible for the parties and witnesses"; (2) the location of "relevant witnesses and evidence"; (3) the positions of the parties; and (4) the experience of the transferee judge and district in navigating "the nuances of complex and multidistrict litigation." *In re: Aggrenox Antitrust Litig.*, 11 F. Supp. 3d 1342, 1343 (J.P.M.L. 2014). Movants submit that the District of New Mexico (Albuquerque) is well-suited for these cases, as in *In re Santa Fe Natural Tobacco Company Marketing and Sales Practices Litigation*, 178 F.Supp.3d 1377, 1379

7

(J.P.M.L. 2016). Also, because this litigation involves an alleged sprawling conspiracy spanning the United States, the Panel should select a district that is "geographically central and accessible."[7] *In re: DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 787 F. Supp. 2d 1358, 1360 (J.P.M.L. 2011). All of these factors, taken together, support transfer to the District of New Mexico.

First, and perhaps most important, the District of New Mexico alone possesses a significant factual and geographical nexus to the issues in dispute in the Related Actions. It is, in fact, the only district in which the Related Actions are pending that is sure to contain both relevant witnesses and evidence of the alleged conspiracy.

Shale oil, often referred to as tight oil, is only produced in a handful of locations in the continental United States. The colored portions of the map below represent shale oil plays in the United States.



---

[7] *See* Judicial Panel on Multidistrict Litigation, *MDL Statistics Report—Distribution of Pending MDL Dockets by District* (April 1, 2024), *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-1-2024.pdf (last visited April 28, 2024).

Source: https://atlas.eia.gov/apps/tight-oil-and-shale-gas-plays-1/explore

Of the various shale oil plays in the United States, the Permian Basin, shared between New Mexico and Texas, is by far the most important and productive. As of March 2024, 50% of all shale oil produced in the United States comes from the Permian Basin in New Mexico and Texas.[8]

Many of the parties in the Related Actions may be found or previously operated in New Mexico. Plaintiff Jarrod Johnson is a citizen of New Mexico. Numerous Defendants or related entities operated oil and gas wells in New Mexico during the class period alleged in the Related Actions.[9] Accordingly, witnesses and documents relevant to the case, including production and sales data, may be found in New Mexico. On these facts, New Mexico is undeniably a state in which the conspiracy had its effect. *See, e.g., In re New Mexico Natural Gas Antitrust Litigation*, 482 F.Supp. 333, 337 (J.D.M.D 1979) (transferring the case to the District of New Mexico because "New Mexico is the state in which the conspiracy had its effects and where the New Mexico Public Service Commission maintains records. It is thus likely that many relevant witnesses and documents will also be found within the District of New Mexico.").

Second, the District of New Mexico is a convenient location for the parties and witnesses. Each year, millions of American businesspeople and tourists visit the Land of Enchantment. In 2022, for example, Americans logged nearly 17 million overnight trips to New Mexico, with business travel accounting for 9% of all visits.[10] Albuquerque alone has over 18,000 hotel rooms spread out over 180 properties.[11]

---

[8] https://www.eia.gov/petroleum/data.php#crude (providing link to monthly tight (shale) oil production by plays).
[9] *See* New Mexico Oil and Gas Operators, available at https://www.drillingedge.com/new-mexico/operators (Listing Permian Resources Operating, LLC; Continental Resources, Inc.; EOG Resources Inc.; Hess Corporation; and Occidental Permian LTD as significant operators in New Mexico).
[10] https://www.governor.state.nm.us/2023/10/18/new-mexicos-tourism-industry-sees-all-time-record-spending/#:~:text=Earlier%20this%20year%2C%20NMTD%20published,almost%20double%20that%20of%202021.
[11] https://www.matthews.com/hospitality-market-report-new-mexico/

Given that lawyers representing the parties in the Related Actions are geographically diverse, travel is likewise an important consideration. As fate would have it, the District of New Mexico is serviced by direct flights to the nation's key transportation hubs, including: Seattle, San Francisco, Los Angeles, San Diego, Denver, Dallas, Houston, Chicago, New York, Washington, DC, and Atlanta.



Source:  https://www.abqsunport.com/wherewefly/

With ample hotel accommodations and air transportation routes, the District of New Mexico will more than serve the convenience of parties and witnesses.

Third, Movants clearly believe that the District of New Mexico is the logical transferee forum. It is where the case belongs, given the significant factual and geographical ties to the issues in dispute. The District of Nevada, on the other hand, has no clear link to the matters at issue in the Related Actions, other than the residence of two named plaintiffs.

Indeed, it is telling that the Defendants in the Related Actions have already filed a transfer motion under 28 U.S.C. section 1404(A), arguing that the Nevada Related Actions should be transferred to the Western District of Texas—where no case is on file—in light of the absence of factual and

geographical links to the District of Nevada. Defendants have argued in their motion papers that it is undisputed that "[n]one of the events Plaintiffs allege gave rise to the purported conspiracy occurred in Nevada."[12] And Defendants have highlighted the fact in moving before the Nevada court for transfer to Texas that Plaintiffs' allegations have "strong ties to the Permian Basin region."[13]

As of the filing of this Motion, Defendants Section 1404 motion remains unresolved in the District of Nevada. At the time Defendants' motion was filed, no Related Actions were on file in a district encompassing the Permian Basin or any other shale oil play relevant to the allegations. Now that two Related Actions are on file in New Mexico—in the Permian Basin—Defendants' existing arguments militate forcefully in support of the relief sought in this Motion. Put simply, the District of New Mexico offers a compelling compromise between the existing positions advanced in the Nevada Related Actions.

Finally, Judge Matthew L. Garcia, who is currently presiding over one of the Related Actions pending in the District of New Mexico (Albuquerque), is a capable jurist "who has not yet had the opportunity to preside over an MDL." *In re Fisher-Price Rock 'N Play Sleeper Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2903, 2019 WL 4010712, at *2 (J.P.M.L. 2019); *see In re Stryker Orthopaedics LFIT V40 Femoral Head Prod. Liab. Litig.*, 249 F. Supp. 3d 1353, 1356 (J.P.M.L. 2017) (same). It is also true that the District of New Mexico (Albuquerque) possesses substantial resources and has a track record of efficiency,[14] routinely handles multidistrict antitrust litigation,[15] and has many experienced jurists who can manage this complex multi-party litigation. *See In re: Aggrenox*, 11F. Supp. 3d at 1343 (considering

---

[12] Case No. 2:24-cv-00103-MMD-MDC, Dkt. 157 at 1 (U.S. District Court – District of Nevada (Las Vegas)).
[13] *Id.*
[14] For example, the median time from filing to disposition for civil cases in the District of New Mexico is 11.7. *See* US Courts, *U.S. District Courts–Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2023*, available at https://www.uscourts.gov/file/72522/download (last visited April 26, 2024).
[15] For example, as of April 1, 2024, there are two MDL cases pending in the District of New Mexico. *See* Judicial Panel on Multidistrict Litigation, *MDL Statistics Report - Distribution of Pending MDL Dockets by District*, available at https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-April-1-2024.pdf (last accessed April 29, 2024).

11

experience of district); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig. (No. II)*, 273 F. Supp. 2d 1353, 1355 (J.P.M.L. 2003) (concluding that the district "possesses the necessary resources to be able to devote the substantial time and effort to pretrial matters that this complex docket is likely to require.").

For all these reasons, the District of New Mexico (Albuquerque) is a suitable transferee district and Judge Matthew L. Garcia will help steer this litigation on a prudent course.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Panel transfer and promptly centralize the Related Actions before the Hon. Matthew L. Garcia of the New Mexico (Albuquerque) or another judge in the district.

Dated: May 8, 2024

Respectfully submitted,

*/s/ Warren T. Burns*
Warren T. Burns
Daniel H. Charest
BURNS CHAREST LLP
900 Jackson Street, Suite 500
Dallas, TX 75202
Telephone.: (469) 904-4550
wburns@burnscharest.com
dcharest@burnscharest.com

Korey Nelson
BURNS CHAREST LLP
365 Canal Street, Suite 1170
New Orleans, Louisiana 70130
Telephone: (504) 799-7845
knelson@burnscharest.com

Rex A. Sharp
Isaac L. Diel
W. Greg Wright
Brandon C. Landt
Hammons P. Hepner
SHARP LAW LLP
4820 W. 75th Street
Prairie Village, KS 66208
Telephone: (913) 901-0505
rsharp@midwest-law.com
idiel@midwest-law.com

12

gwright@midwest-law.com
blandt@midwest-law.com
hhepner@midwest-law.com

Steven N. Williams
Kai'Ree K. Howard
STEVEN WILLIAMS LAW, P.C.
201 Spear Street, Suite 1100
San Francisco, California 94105
Telephone: 415-697-1509
swilliams@stevenwilliamslaw.com
khoward@stevenwilliamslaw.com

Christopher A. Dodd
DODD LAW OFFICE, LLC
500 Marquette Avenue NW, Suite 1330
Albuquerque, New Mexico 87102
Tel: (505) 475-2932
chris@doddnm.com

***Attorneys for Plaintiffs Matthew E. Foos, Andrew A. Hund, Michael B. Ackerman, Jarrod Johnson, and Mackey and Sons Inc.***