**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: SHALE OIL ANTITRUST LIGITATION | MDL NO. 3119 |

**THE NEVADA PLAINTIFFS' RESPONSE MEMORANDUM
IN SUPPORT OF TRANSFER AND CENTRALIZATION
OF RELATED ACTIONS PURSUANT TO 28 U.S.C. § 1407**

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................1

PROCEDURAL BACKGROUND ........................................................................2

ARGUMENT .......................................................................................................5

    I.    CENTRALIZATION OF THESE RELATED ACTIONS IS APPROPRIATE .................5

    II.    THE PANEL SHOULD TRANSFER THE RELATED ACTIONS TO THE DISTRICT OF NEVADA ...............................................................................................5

        A.    Most of the Related Actions and All of the First-Filed Actions Are Pending in the District of Nevada. ...............................................................6

        B.    The Nevada Cases Already Have Been Consolidated Before Chief Judge Du ...............7

        C.    The Nevada Plaintiffs Are Collaborating to Efficiently Advance the Nevada Cases. ......8

        D.    The District of Nevada is a Central and Convenient Location for All Parties and has Substantial Judicial Resources. .............................................10

    III.    IF THE PANEL DOES NOT TRANSFER THESE ACTIONS TO THE DISTRICT OF NEVADA, THE DISTRICT OF NEW MEXICO WOULD BE THE NEXT BEST FORUM ...............................................................................................13

CONCLUSION ..................................................................................................17

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abbott Labs., Inc. (Ross Labs. Div.) v. Segura*,
907 S.W.2d 503 (Tex. 1995)..................................................................14

*In re Air Crash Disaster near Papeete, Tahiti, on July 22, 1973*,
397 F. Supp. 886 (J.P.M.L. 1975)............................................................13

*In re AndroGel Prods. Liab. Litig.*,
24 F. Supp. 3d 1378 (J.P.M.L. 2014) ......................................................7

*In re Apple Inc. Device Performance Litig.*,
291 F. Supp. 3d 1371 (J.P.M.L. 2018) ....................................................7

*In re Elevator & Escalator Antitrust Litig.*,
350 F. Supp. 2d 1351 (J.P.M.L. 2004) ....................................................6

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*,
268 F. Supp. 3d 1356 (J.P.M.L. 2017) ..................................................10

*In re Equifax, Inc. Consumer Data Sec. Breach Litig.*,
MDL No. 2008, 2018 WL 3770539 (J.P.M.L. Aug 8, 2018) ................14

*In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*,
254 F. Supp. 3d 1381 (J.P.M.L. 2017) .............................................. 10, 14

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
No. MDL 3090, 2024 WL 436478 (J.P.M.L. 2024) ...............................7

*In re Genentech Herceptin (trastuzumab) Mktg. & Sales Pracs. Litig.*,
178 F. Supp. 3d 1374 (J.P.M.L. 2016) ....................................................8

*In re Generali COVID-19 Travel Ins. Litig.*,
509 F. Supp. 3d 1365 (J.P.M.L. 2020) ..................................................11

*In re Glaceau Vitaminwater Mktg. & Sales Pracs. Litig.*,
641 F. Supp. 2d 1381 (J.P.M.L. 2009) ..................................................10

*In re GMAC Ins. Mgmt. Corp. Overtime Pay Litig.*,
342 F. Supp. 2d 1357 (J.P.M.L. 2004) ..................................................11

*Griffin Cap. Co., LLC v. Essential Props. Realty Tr., Inc.*,
No. 1:18-CV-4255-MHC, 2019 WL 5586547 (N.D. Ga. Jan. 18, 2019)..............................15

*Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977)......................................................14

*In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig.*,
568 F. Supp. 3d 1412 (J.P.M.L. 2021) ...................................................................8

*In re Kerydin (Tavaborole) Topical Sol. 5% Patent Litig.*,
366 F. Supp. 3d 1370 (J.P.M.L. 2019) ...................................................................6

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
24 F. Supp. 3d 1361 (J.P.M.L. 2014) .................................................................6, 7

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
523 U.S. 26 (1998) ...............................................................................................4

*In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*,
988 F. Supp. 2d 1364 (J.P.M.L. 2013) ...................................................................9

*In re Mush Cay Litig.*,
330 F. Supp. 2d 1364 (J.P.M.L. 2004) ..............................................................9, 11

*In re Peanut Crop Ins. Litig.*,
342 F. Supp. 2d 1353 (J.P.M.L. 2004) ...................................................................9

*In re Pet Food Prods. Liab. Litig.*,
499 F. Supp. 2d 1346 (J.P.M.L. 2007) ...................................................................9

*In re Prograf Antitrust Litig.*,
789 F. Supp. 2d 1380 (J.P.M.L. 2011) ...................................................................6

*In re Proton-Pump Inhibitor Prods. Liab. Litig. (No. II)*,
261 F. Supp. 3d 1351 (J.P.M.L. 2017) ...................................................................6

*In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*,
763 F. Supp. 2d 1374 (J.P.M.L. 2011) .................................................................11

*In re Refrigerant Compressors Antitrust Litig.*,
626 F. Supp. 2d 1320 (J.P.M.L. 2009) ...................................................................6

*In re Republic Nat'l-Realty Equities Sec. Litig.*,
382 F. Supp. 1403 (J.P.M.L. 1974) .......................................................................9

*In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*,
412 F. Supp. 3d 1344 (J.P.M.L. 2019) ...................................................................6

*In re Standard Auto. Corp. Retiree Benefits "ERISA" Litig.*,
431 F. Supp. 2d 1357 (J.P.M.L. 2006) ...................................................................9

*In re Stryker Orthopaedics LFIT V40 Femoral Head Prod. Liab. Litig.*,
249 F. Supp. 3d 1353 (J.P.M.L. 2017) .............................................................8, 14

*In re TLI Commc'ns. LLC Patent Litig.*,
    26 F. Supp. 3d 1396 (J.P.M.L. 2014) .................................................................................14

*In Re Wal-Mart Wage & Hour Emp. Pracs. Litig.*,
    416 F. Supp. 2d 1356 (J.P.M.L. 2006) ...............................................................................10

*In re Zetia (Ezetimibe) Antitrust Litig.*,
    325 F. Supp. 3d 1369 (J.P.M.L. 2018) .................................................................................6

STATUTES

28 U.S.C. § 1404 ................................................................................................... 4, 5, 9, 13

28 U.S.C. § 1407 ........................................................................................................ 4, 5, 7

OTHER AUTHORITIES

David F. Herr, MULTIDISTRICT LITIGATION MANUAL (2022 ed.)................................................15

## INTRODUCTION

All 17 plaintiffs in the nine actions consolidated in the District of Nevada (the "Nevada Plaintiffs")[1] collectively file this joint response supporting the *Foos* Plaintiffs' request for centralization of the 11 Related Actions.[2]  However, for the reasons discussed below, the Nevada Plaintiffs respectfully request that the Panel centralize the Related Actions in the Las Vegas Division of the District of Nevada before Chief Judge Miranda M. Du.

Each of the Related Actions alleges that Defendants conspired to restrict the production of shale oil in the U.S. to inflate its price, injuring various classes of U.S. purchasers of oil-derivate products.  The first-filed complaint, *Rosenbaum*, was filed in the District of Nevada in January 2024.  Eight additional complaints were filed in Nevada in January and February and Plaintiffs' Counsel in the Nevada Cases have been working together cooperatively to move the case forward in Nevada.

---

[1]       The nine actions, prior to their consolidation in *Rosenbaum v. Permian Resources, et. al.*, 2:24-cv-00103-MMD-MDC (D. Nev.) filed January 12, 2024 ("*Rosenbaum*"), included: *Andrew Caplen Installations LLC v. Permian Resources Corp, et al.*, No. 2:24-cv-00150-MMD-MDC (D. Nev.), filed January 22, 2024 ("*Andrew Caplen Installations*"); *These Paws Were Made For Walkin' LLC v. Permian Resources Corp, et al*., No. 2:24-cv-00164-MMD-MDC (D. Nev.), filed January 24, 2024 ("*These Paws Were Made For Walkin'*"); *Courtmanche v. Permian Resources Corp. et al*, No. 2:24-cv-00198-MMD-MDC (D. Nev.), filed January 29, 2024 ("*Courtmanche*"); *Mellor v. Permian Resources Corp. et al*, No. 2:24-cv-00253-MMD-MDC (D. Nev.), filed February 6, 2024 ("*Mellor*"); *Santillo v. Permian Resources Corp. et al*, No. 2:24-cv-00279-MMD-MDC (D. Nev.), filed February 8, 2024 ("*Santillo*"); *Beaumont v. Permian Resources Corp. et al*, No. 2:24-cv-00298-GMN-MDC (D. Nev.), filed February 12, 2024 ("*Beaumont*"); *MacDowell v. Permian Resources Corp. et al*, No. 2:24-cv-00325-MMD-MDC (D. Nev.), filed February 15, 2024 ("*MacDowell*"); *Western Cab Co. v. Periman Resources Corp. et al*, No. 2:24-cv-00401-MMD-MDC (D. Nev.), filed February 28, 2024 ("*Western Cab Company*") (collectively, the "Nevada Cases").

[2]       The Related Actions consist of the nine Nevada Cases, as well as *Foos v. Permian Resources, et al.*, No. 1:24-cv-00361 (D.N.M.) filed April 15, 2024; and *Brown v. Permian Resources, et al.*, No. 1:24-cv-00430 (D.N.M.) filed May 6, 2024 (*Foos* and *Brown* together, the "New Mexico Cases").

It was not until several months later, in April and May 2024, that the New Mexico Cases were filed – both of which substantially copied the allegations first brought to light in the Nevada Cases – in particular, the first-filed *Rosenbaum* action.  By the time the New Mexico Cases were filed, there had already been a hearing in Nevada, a motion decided on a conflict issue, and the Nevada Cases had all been consolidated before a single judge, Chief Judge Du.  Since then, this litigation has been proceeding in Nevada and motion practice is underway on several key issues— including the production of relevant documentary evidence that one defendant had previously made available to the Federal Trade Commission ("FTC").  Conversely, because of their nascency, the New Mexico Cases have not advanced procedurally.

Transfer of the two New Mexico Cases to the District of Nevada for consolidated pre-trial proceedings thus will advance the efficient resolution of the litigation.  The District of Nevada is easily accessible to all parties and offers an exceptionally qualified and experienced jurist in Chief Judge Du, who in her 12 years on the bench has successfully managed complex class action antitrust litigation but has yet to oversee an MDL.  In addition, the District of Nevada will serve the convenience of the parties and witnesses and has the most favorable docket conditions.

For these and the further reasons articulated below, the Nevada Plaintiffs respectfully request that the Panel centralize the Related Actions in the District of Nevada.

## PROCEDURAL BACKGROUND

The Nevada Plaintiffs allege that Defendants conspired among themselves and with the Organization of Petroleum Exporting Countries ("OPEC") to restrict the production of shale oil produced in the United States in violation of the antitrust, unfair competition, and consumer protection laws of 28 states and the District of Columbia in addition to Section 1 of the Sherman Act.

These 28 states include Nevada, where the Nevada Plaintiffs filed the first case, *Rosenbaum*, on January 12, 2024.  Plaintiff Daniel Rosenbaum, a citizen of Nevada and a Las Vegas resident, along with two other Plaintiffs, allege that they paid higher gas prices due to Defendants' conduct and seek to represent a class of consumers from 28 states and the District of Columbia that purchased retail gasoline for personal use.[3]  Subsequently, eight additional cases were filed in the District of Nevada by Plaintiffs seeking to represent classes of persons who purchased home heating oil,[4] as well as other petroleum byproducts for business purposes, such as gas and diesel fuel[5] and commercial marine fuel.[6]  Plaintiffs' counsel in each of the Nevada Cases have been working cooperatively since the inception of their respective cases.

Since the January filing of the first Nevada complaint, the Nevada Cases have advanced expeditiously.  There was an in-person hearing in Nevada on March 4, 2024 (the "March Hearing") to discuss jurisdiction, venue, consolidation, and interested parties, and counsel for all parties appeared in person.[7]  Several of the Nevada Cases were consolidated,[8] and motion practice on critical issues followed in short order after the March Hearing.  First, the Nevada Plaintiffs filed a joint motion requesting that the judge to whom the cases originally were assigned, Judge Gloria

---

[3]     *Rosenbaum*, ECF No. 1 ("Complaint"), at ¶¶17-19, 121-123.  Unless specified otherwise, all references to any plaintiffs' allegations in any of the Related Actions will be to the *Rosenbaum* Complaint.

[4]     *Courtmanche*; *Santillo*; *Beaumont*; *MacDowell*.

[5]     *Andrew Caplen Installations*; *These Paws Were Made For Walkin'*; *Western Cab Company*.

[6]     *Mellor*.

[7]     *See Rosenbaum*, ECF No. 149 (Transcript of Proceedings) at 6:22-23; 10:8-14:11; 13:5-9; 21:18-23:16; 25:17-26:8.

[8]     *See Rosenbaum*, ECF Nos. 31 and 159 (consolidating *Andrew Caplen Installations*, *These Paws Were Made For Walkin'*, and *Western Cab Company* under *Rosenbaum*); *see Courtmanche*, ECF Nos. 23, 24, and 27 (consolidating *Santillo*, *Beaumont*, and *MacDowell* under *Courtmanche*); *see Mellor*, ECF No. 18 (reassigning case to Judge Navarro).

3

M. Navarro, recuse herself based on her disclosure at the March Hearing that she owned stock in ExxonMobil, a non-party that had a binding agreement to acquire Defendant Pioneer.[9] On April 4, 2024, the Nevada Plaintiffs' recusal motion was granted, and the cases were reassigned to Chief Judge Du.[10] In addition, on March 22, 2024, Defendants moved under 28 U.S.C. § 1404 to transfer the Nevada Cases to Texas (the "1404 Motion").[11] The 1404 Motion is now fully briefed and pending before Chief Judge Du.[12] Finally, on May 8, 2024, the Nevada Plaintiffs moved for pre-26(f) conference discovery of certain documents that Defendant Pioneer had previously produced to the FTC.[13] That motion is based on an FTC disclosure that documents Pioneer had produced in connection with the FTC's review of Pioneer's recently consummated merger with Exxon-Mobil included hundreds of messages between Pioneer's CEO, Pioneer's competitors, and OPEC officials concerning Defendants' efforts to restrict the production of shale oil and inflate the price of oil.[14] Briefing also is complete on this motion, which is pending.[15] Nevada Plaintiffs have also sent Defendants drafts of a protective order ("Protective Order") and a protocol to govern the

---

[9]     *See Rosenbaum*, ECF No. 156.

[10]    See *Rosenbaum*, ECF Nos. 156, 162 and 164; *See also Rosenbaum*, ECF. No. 173 (May 16, 2024 Order, the "Consolidation Order").

[11]    *See Rosenbaum*, ECF No. 157.

[12]    *See Rosenbaum*, ECF Nos. 166, 167, 168. If the Panel centralized the Related Actions in the District of Nevada pursuant to 28 U.S.C. § 1407, that order would practically moot the 1404 Motion. *Cf. Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 41 n.4 (1998) ("the statutory language of § 1407 precludes a transferee court from granting any § 1404(a) motion").

[13]    *See Rosenbaum*, ECF Nos. 169, 170, 171.

[14]    *Id.*

[15]    *See Rosenbaum*, ECF Nos. 175, 181.

production of electronically-stored information ("ESI Protocol") and served document preservation notices on multiple non-parties.

Meanwhile, on April 15 and May 6, 2024, two class actions asserting factual and legal claims copied from the *Rosenbaum* action were filed against Defendants on behalf of gasoline purchasers were filed in the District of New Mexico.  As of the date of this response, the New Mexico Cases are assigned to different judges, have not been related or consolidated, have not progressed procedurally, and the parties to the New Mexico Cases have not appeared before their respective courts.

## ARGUMENT

### I.   CENTRALIZATION OF THESE RELATED ACTIONS IS APPROPRIATE

The Nevada Plaintiffs agree that these Related Actions all involve common questions of fact and law, the centralization of which will serve the convenience of the parties and the witnesses and promote the just and efficient resolution of this litigation.  Therefore, centralization of these actions in a single district is appropriate under 28 U.S.C. § 1407.  However, as set forth below, the District of Nevada is a more appropriate transferee forum than the District of New Mexico, and both are superior to any District in Texas.[16]

### II.  THE PANEL SHOULD TRANSFER THE RELATED ACTIONS TO THE DISTRICT OF NEVADA

The District of Nevada is best suited for this litigation for multiple reasons.  The vast majority of the Related Actions, including the first-filed case and the next eight cases filed, were filed in the District of Nevada and have already been consolidated before Chief Judge Du.  The Nevada Plaintiffs are efficiently collaborating to initiate discovery and litigate their claims and the

---

[16]     Given Defendants' § 1404 Motion, the Nevada Plaintiffs anticipate Defendants will support centralization in Texas and address those arguments in advance.

case has moved forward in the last six months – progress that could be lost with a change in venue. And the District of Nevada is both considerably more convenient than the other suggested districts and has more favorable docket conditions.  In sum, what is filed in Vegas, should stay in Vegas.

**A.  Most of the Related Actions and All of the First-Filed Actions Are Pending in the District of Nevada.**

The Panel's typical practice is to consolidate actions in the district "where the first-filed and largest number of actions are pending." *In re Elevator & Escalator Antitrust Litig.*, 350 F. Supp. 2d 1351, 1353 (J.P.M.L. 2004); *see also In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, 412 F. Supp. 3d 1344, 1346 (J.P.M.L. 2019) (consolidation appropriate in court where the "earliest-filed actions" were pending). *See, e.g.*, *In re Kerydin (Tavaborole) Topical Sol. 5% Patent Litig.*, 366 F. Supp. 3d 1370, 1372 (J.P.M.L. 2019) (where the Panel selected the transferee district for one primary reason: "The claims of thirteen of the fourteen ANDA filers are pending in this district."); *In re Zetia (Ezetimibe) Antitrust Litig.*, 325 F. Supp. 3d 1369, 1371 (J.P.M.L. 2018) (centralizing cases in the district where "the three earliest-filed actions" and four tag-along actions were pending); *In re Proton-Pump Inhibitor Prods. Liab. Litig. (No. II)*, 261 F. Supp. 3d 1351, 1355 (J.P.M.L. 2017) (selecting district because it had more pending cases than any other district that were being actively managed by a single judge and "enjoys the support of most plaintiffs"); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 24 F. Supp. 3d 1361, 1363 (J.P.M.L. 2014) (centralizing nationwide litigation where "[t]he majority of actions are pending"); *In re Prograf Antitrust Litig.*, 789 F. Supp. 2d 1380, 1381 (J.P.M.L. 2011) (selecting district because "the first-filed action is pending there"); *In re Refrigerant Compressors Antitrust Litig.*, 626 F. Supp. 2d 1320, 1321 (J.P.M.L. 2009) (selecting district because it had "considerably more [cases] than in any other district").

6

Here, the first action was filed in the District of Nevada over three months before the first action was filed in the District of New Mexico, and every Nevada Case was initiated months before the New Mexico Cases.  In total, nine of the 11 total Related Actions were filed in the District of Nevada, only two are pending in New Mexico, and *no case* is pending in Texas.  This factor clearly favors transfer to the District of Nevada, where the vast majority of Plaintiffs filed in an effort to avoid burdening the Panel with a § 1407 motion.

**B.  The Nevada Cases Already Have Been Consolidated Before Chief Judge Du.**

The Panel will transfer related actions to the district where most of the related actions are pending, particularly if the actions in that district are before a single judge who has "taken preliminary steps to organize [the] litigation."  *In re Fortra File Transfer Software Data Sec. Breach Litig.*, No. MDL 3090, 2024 WL 436478, at *2 (J.P.M.L. 2024); *see also In re Apple Inc. Device Performance Litig.*, 291 F. Supp. 3d 1371, 1372 (J.P.M.L. 2018) (transferee district chosen in part because "[m]ore than half of the related actions (32 of 61) were filed" there and "[a]ll but one of the related actions pending in this district" were assigned to a single judge "who already has taken steps to coordinate the actions before him"); *In re AndroGel Prods. Liab. Litig.*, 24 F. Supp. 3d 1378, 1380 (J.P.M.L. 2014) (selecting district where the transferee judge is "presiding over most of the actions pending in this district and already has taken initial steps to organize this litigation").

The District of Nevada has done just that.  There, all nine of the pending cases have been consolidated before Judge Du,[17] and multiple motions are currently pending.  Chief Judge Du also is an experienced and capable jurist who has the requisite experience to handle a case such as this,

---

[17]    *See* Consolidation Order, *Rosenbaum*, ECF No. 173.

7

as she has presided over large nationwide class action and antitrust cases.[18]  *See Green Mountain*, 24 F. Supp. 3d at 1363 (assigning antitrust case to judge presiding over sixteen of the pending related actions who has "extensive experience in complex civil litigation"). However, notwithstanding her familiarity with complex antitrust litigation, Chief Judge Du "has not yet had an opportunity to preside over an MDL docket," a factor the Panel often considers in making MDL assignments.  *In re Stryker Orthopaedics LFIT V40 Femoral Head Prod. Liab. Litig.*, 249 F. Supp. 3d 1353, 1356 (J.P.M.L. 2017); *see also In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prods. Liab. Litig.*, 568 F. Supp. 3d 1412, 1414 (J.P.M.L. 2021) ("The first-filed case is pending in this district before Judge Anuraag Singhal . . . .  By selecting Judge Singhal, we are selecting a jurist who has not yet had the opportunity to preside over multidistrict litigation."). Transferring the cases to Nevada for pre-trial proceedings before Chief Judge Du thus will both ensure the litigation progresses before a jurist experienced in complex litigation currently overseeing nine of the 11 pending actions, including the first-filed case, and provide Chief Judge Du with a well-deserved opportunity to preside over an MDL docket.

## C. The Nevada Plaintiffs Are Collaborating to Efficiently Advance the Nevada Cases.

Given that judicial efficiency is one of the primary goals of multidistrict litigation, it is no surprise that the Panel favors transferring related cases to the district with the most procedurally advanced cases.  *See, e.g.*, *In re Genentech Herceptin (trastuzumab) Mktg. & Sales Pracs. Litig.*,

---

[18]     Examples of Chief Judge Du's recent experience include: *Gibson v. Cendyn Group, LLC*, No. 2:23-cv-00140-MMD-DJA (D. Nev.) (antitrust class action); *Green Sols. Recycling, LLC v. Rena Disposal Co., Inc.*, No. 3:16-cv-00334-MMD-CBC (D. Nev.) (antitrust); *St. Mary's Regional Med. Ctr. v. Renown Health*, No. 3:13-cv-00702-MMD-VPC (D. Nev.) (antitrust); *Richey v. Axon Enters., Inc.*, No. 3:19-cv-00192-MMD-CJB (D. Nev.) (class action); *Inscho v. Equifax Info. Servs.*, LLC, No. 2:18-cv-00790-MMD-VCF (D. Nev.) (class action); *Hopkins v. ClubCorp Holdings, Inc.*, No. 2:17-cv-02158-MMD-VCF (D. Nev.) (class action); and *Hastings v. Financial Corp. of Am.*, No. 2:16-cv-00479-MMD-GWF (D. Nev.) (class action).

178 F. Supp. 3d 1374, 1376 (J.P.M.L. 2016) (selecting district where the "first-filed and most procedurally advanced action" was pending and the judge had "developed some familiarity with both the issues in this litigation and with counsel"); *In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig.*, 988 F. Supp. 2d 1364, 1367 (J.P.M.L. 2013) (selecting district where judge was "presiding over the most advanced action" as "she is in a particularly favorable position to structure this litigation as to minimize delay"); *In re Pet Food Prods. Liab. Litig.*, 499 F. Supp. 2d 1346, 1347 (J.P.M.L. 2007) (selecting district because "[p]retrial proceedings are advancing well there and about one-third of all pending actions are already in this district"); *In re Standard Auto. Corp. Retiree Benefits "ERISA" Litig.*, 431 F. Supp. 2d 1357, 1358 (J.P.M.L. 2006) (selecting district because the first-filed action is pending there, "pretrial proceedings are underway," and most parties support transfer there); *In re Mush Cay Litig.*, 330 F. Supp. 2d 1364, 1365 (J.P.M.L. 2004) (transferring to District of Nevada, where the "first-filed . . . . constituent action is proceeding apace"); *In re Peanut Crop Ins. Litig.*, 342 F. Supp. 2d 1353, 1354 (J.P.M.L. 2004) (selecting district in which "proceedings are furthest advanced"); *In re Republic Nat'l-Realty Equities Sec. Litig.*, 382 F. Supp. 1403, 1406 (J.P.M.L. 1974) (denying request to transfer to the Northern District of Texas and selecting district where 13 of the 18 actions were already pending before a single judge and were "proceeding expeditiously under his supervision").

Nevada indisputably has the most advanced cases as the Nevada Plaintiffs have been pushing this litigation forward months before any other cases were even filed. The *Rosenbaum* docket has 182 entries and, as noted above, includes Defendants' § 1404 Motion and the Nevada Plaintiffs' motion for discovery of documents that Pioneer produced to the FTC, both fully briefed. Additionally, the Nevada Plaintiffs already requested a 26(f) conference with Defendants, initiated

negotiations for the Protective Order and the ESI Protocol, sent litigation hold letters to relevant non-parties, retained an expert, and selected e-discovery and court reporting vendors.

Relatedly, the Panel considers the cooperation among plaintiffs when deciding in which district to consolidate related actions. *See, e.g.*, *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. & Antitrust Litig.*, 268 F. Supp. 3d 1356, 1360 (J.P.M.L. 2017) (the Panel "recogniz[ed] the prior cooperation among these plaintiffs in organizing the litigation" in selecting district where "first-filed action is pending" when that action was "de facto consolidation of the claims of plaintiffs in eight actions"); *In re Glaceau Vitaminwater Mktg. & Sales Pracs. Litig.*, 641 F. Supp. 2d 1381, 1381-82 (J.P.M.L. 2009) ("[i]f the plaintiffs have managed to cooperate and have agreed to file in one district, we see no reason to discourage their efforts"). Here, the Nevada Plaintiffs have been working, for months, cooperatively and effectively to move the litigation forward and will continue to do so.

Because the Nevada Cases are more advanced than the New Mexico Cases,[19] and the Nevada Plaintiffs have demonstrated their ability to work cooperatively to materially advance the litigation, the District of Nevada is the most appropriate district for transfer and consolidation of the Related Actions.

**D. The District of Nevada is a Central and Convenient Location for All Parties and has Substantial Judicial Resources.**

In MDLs with nationwide impact such as this one, the Panel also considers whether the transferee district is "centrally and relatively conveniently located" and has the "necessary resources" to adjudicate the consolidated actions. *In Re Wal-Mart Wage & Hour Emp. Pracs. Litig.*, 416 F. Supp. 2d 1356, 1358 (J.P.M.L. 2006) (selecting the District of Nevada for

---

[19]   Of course, there are no cases filed in Texas, so transferring the Related Cases to Texas would be the least efficient possible outcome.

centralization of nationwide class actions); *see also, e.g.*, *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*, 254 F. Supp. 3d 1381, 1383 (J.P.M.L. 2017) (centralizing litigation in district that "is accessible for domestic and international parties and witnesses, and is centrally located to many of the pending actions"); *Mush Cay Litig.*, 330 F. Supp. 2d at 1365 (the District of Nevada is "equipped with the resources that this docket is likely to require"); *In re GMAC Ins. Mgmt. Corp. Overtime Pay Litig.*, 342 F. Supp. 2d 1357, 1358 (J.P.M.L. 2004) (selecting district because "the first-filed and most advanced action is pending there, and . . . this tribunal has the resources available to manage this litigation.").  This factor strongly supports transfer to the District of Nevada.

The alleged conspiracy injured businesses and consumers all over the United States.  Yet, it is significant that of the 26 plaintiffs across the cases, three are residents of Nevada, while only one is a resident of New Mexico, and none are residents of Texas.  *See In re Prudential Ins. Co. of Am. SGLI/VGLI Contract Litig.*, 763 F. Supp. 2d 1374, 1375 (J.P.M.L. 2011) (centralizing cases in the district of the first-filed action and "where two named plaintiffs . . . reside").  It is also significant that one of the Nevada resident plaintiffs, Western Cab Company, is incorporated and headquartered in Nevada.  *See In re Generali COVID-19 Travel Ins. Litig.*, 509 F. Supp. 3d 1365, 1367 (J.P.M.L. 2020) ("We are persuaded that the [district], where three cases are pending, is an appropriate transferee district.  [A party] is headquartered and maintains its principal place of business in [the district].").

Further, the District of Nevada courthouse, located in Las Vegas, is a central, accessible, and convenient location for all parties in the Related Actions, as well as their counsel and witnesses.  The Harry Reid International Airport in Las Vegas, Nevada is the seventh busiest U.S.

airport by passenger traffic,[20] presently services 31 airlines,[21] and is only 11 miles from the District of Nevada courthouse.  Moreover, owing to its status as a global destination for tourism and business, Las Vegas has an abundance of affordable hotel accommodations, meeting spaces, and other amenities.  Indeed, Las Vegas has over 156,000 hotel rooms.[22]  Many of these accommodations are within an easy walking distance of the Lloyd D. George United States Courthouse.  Travel to the District of New Mexico courthouse in Albuquerque is far less convenient.  In terms of flights, the Albuquerque International Airport is the 60th busiest airport in the U.S.,[23] has far fewer direct flights than Las Vegas, and Albuquerque offers a fraction of the hotel rooms that Las Vegas has.[24]  And, as explained below, travel to any of the districts on Texas is also less convenient.

As to judicial resources, the District of Nevada does not have any current pending MDLs, while the District of New Mexico and the Northern District of Texas have two each.[25]  In 2023, civil cases in the District of Nevada averaged 9.0 months from filing to disposition while the

---

[20]     Joel A. Thomas, *200 Busiest US Airports [Updated for 2024],* STRATOS JET CHARTERS (Dec. 2023), https://www.stratosjets.com/blog/busiest-us-airports/.

[21]     *See* Harry Reid International Airport, *Airline Information*, https://www.harryreidairport.com/Airlines (last visited June 3, 2024).

[22]     *See* Las Vegas Convention & Visitors Auth., *Frequently Asked Questions*, https://www.lvcva.com/research/faq/ (last visited June 3, 2024).

[23]     *200 Busiest US Airports [Updated for 2024], supra* n.20.

[24]     *See* Visit Albuquerque, *Hotels*, https://www.visitalbuquerque.org/meetings/facilities/hotels/ (last visited June 3, 2024) ("over 17,000 sleeping rooms in Albuquerque").

[25]     *See* U.S. District Courts, *MDL Statistics Report – Distribution of Pending MDL Dockets by District, May 1, 2024*, https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-1-2024.pdf (last visited June 3, 2024).

District of New Mexico averaged 9.9 months, and the District of Nevada also had fewer pending cases per judge than the District of New Mexico.[26]

Accordingly, the Las Vegas Division of the District of Nevada is the best and most convenient location for efficient litigation.

### III. IF THE PANEL DOES NOT TRANSFER THESE ACTIONS TO THE DISTRICT OF NEVADA, THE DISTRICT OF NEW MEXICO WOULD BE THE NEXT BEST FORUM

If the Panel is not inclined to centralize this litigation in the District of Nevada, then the Nevada Plaintiffs alternatively support centralization in the District of New Mexico for the reasons identified by the *Foos* Plaintiffs in their Request. To the extent that Defendants propose that this litigation be centralized in the Western District of Texas – with the Northern District of Texas and Southern District of Texas as back-up options, as Defendants argued in their pending § 1404 Motion before Chief Judge Du – the Nevada Plaintiffs oppose and submit that both the District of Nevada and the District of New Mexico are more appropriate venues.

*First*, transfer to the District of Nevada or the District of New Mexico would be more efficient for the parties and the federal judiciary. As described above, the Nevada Cases have already been consolidated and are proceeding apace, with two different motions currently fully briefed. In contrast, there are **zero** pending cases in Texas, and this Panel previously has expressed "extreme[] reluctan[ce] to select a district in which no related action is pending." *In re Air Crash Disaster near Papeete, Tahiti, on July 22, 1973*, 397 F. Supp. 886, 887 (J.P.M.L. 1975); *see also*

---

[26]    *See* U.S. District Courts, *United States District Courts – National Judicial Caseload Profile, 12 month period ending December 31, 2023*, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf (last visited June 3, 2024).

*In re TLI Commc'ns. LLC Patent Litig.*, 26 F. Supp. 3d 1396, 1397 (J.P.M.L. 2014) (declining to transfer cases to defendants' chosen forum where no actions were pending).

 *Second*, while three named plaintiffs are residents of Nevada and one named plaintiff is a resident of New Mexico, no named plaintiff resides in Texas, and none of the Related Cases includes class claims seeking to recover losses under Texas law because Texas law does not permit indirect purchaser antitrust suits.  *See Abbott Labs., Inc. (Ross Labs. Div.) v. Segura*, 907 S.W.2d 503, 505 (Tex. 1995) (applying *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) to bar indirect purchaser claims under Texas antitrust and consumer protection legislation).  Given that there is no Texas damages class and no Texas law at issue, there is no need for the judge hearing these cases to have Texas-specific expertise.

 *Third*, it is of no moment that half of the Defendants are headquartered across Texas.  The Panel transfers cases to a district that it believes overall will further the expeditious resolution of the litigation, even if the location "might inconvenience some parties."  *In re Equifax, Inc. Consumer Data Sec. Breach Litig.*, MDL No. 2008, 2018 WL 3770539, at *1 (J.P.M.L. Aug 8, 2018); *see also Stryker Orthopaedics*, 249 F. Supp. 3d 1353, 1356 (J.P.M.L. 2017) (transferring to District of Massachusetts over the District of New Jersey, the location of Defendant's headquarters and Defendant's preferred district, when five cases were already pending before a judge in "an accessible transferee forum for this litigation, which involves a product that was distributed nationwide"); *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*, 254 F. Supp. 3d 1381, 1383 (J.P.M.L. 2017) (centralizing litigation in the Northern District of Georgia over the District of New Jersey, despite New Jersey being the location of Defendant's headquarters).

And the physical location of responsive documents and information is increasingly "irrelevant" in this modern ESI era. *See Griffin Cap. Co., LLC v. Essential Props. Realty Tr., Inc.*, No. 1:18-CV-4255-MHC, 2019 WL 5586547, at *6 (N.D. Ga. Jan. 18, 2019). The parties can effectively discover electronic evidence located in Texas from anywhere. *See* David F. Herr, MULTIDISTRICT LITIGATION MANUAL, § 6:5 (2022 ed.) ("[D]iscovery can effectively be conducted anywhere in the country regardless of the venue of the action."). As is typical in nationwide antitrust cases, witnesses will likely be deposed at locations convenient to them, or remotely over Zoom or similar technology, irrespective of where the case is pending. Consequently, the physical location of documents or witnesses is not particularly relevant to this inquiry even if their location could be known at this early point in the case. Indeed, transfer to any of Texas's federal district courts would deprive every single plaintiff of their preferred venue choice in service of shifting the burden and inconvenience of litigation from Defendants, who are corporations with nationwide operations and multi-billion-dollar market caps, onto plaintiffs, who are individuals and small businesses that do not reside in Texas.

*Fourth*, the Western District of Texas is substantially less convenient than the Districts of Nevada and New Mexico, while the Northern and Southern Districts of Texas are not more convenient or centrally located. Any suggestion that it would be less convenient for the Parties on the East Coast to fly into Las Vegas (the seventh-busiest airport ***in the United States***), as opposed to the Western District of Texas in Midland/Odessa (the eighth-busiest airport ***in Texas***) is simply not credible.[27] And Counsel in this matter reside all over the country – Las Vegas, New York, San Francisco, Chicago, Washington, DC, Los Angeles, Philadelphia, Minneapolis, New Orleans, Kansas City, San Diego, Boston, Dallas, Oklahoma City, and Connecticut. There are nonstop

---

[27]     *200 Busiest US Airports [Updated for 2024]*, *supra* n.20.

15

flights from Las Vegas to all these locations.[28]  Conversely, transfer to the Western District of Texas would require all but the two Dallas-based attorneys to fly into Midland/Odessa Airport (MAF) with at least one stop.  In fact, of the approximately 20 daily flights to and from MAF, nearly all require a stop at another Texas airport, primarily Houston or Dallas.  And although the Northern District of Texas (Dallas), where only two of eight Defendants reside, and the Southern District of Texas (Houston), where one Defendant resides, offer better travel options than the Western District of Texas, they are no closer to the Permian Basin, where Texas produces shale oil, than the District of New Mexico, where two cases are already pending.[29]

*Finally*, the docket conditions in the Western, Northern, and Southern Districts of Texas are less favorable than those in the District of Nevada or the District of New Mexico.  In particular, all three Texas districts have more total pending cases and more cases per judge than either the District of Nevada or the District of New Mexico.[30]  Moreover, the Western District of Texas has two judicial vacancies (one due to retirement, the other due to a judge taking senior status), the Southern District of Texas also has two (both due to senior status elections), and the Northern District of Texas has one (due to a senior status election).[31]  In contrast, the Districts of Nevada and New Mexico have zero.[32]

---

[28]    Notably, despite the fact there are direct flights from Midland to only six cities, one of those cities is Las Vegas.

[29]    Distance from Midland, TX to Houston, TX: 427 miles; to Dallas, TX: 313 miles; to Albuquerque, NM: 339 miles. https://www.travelmath.com/distance/.

[30]    *See United States District Courts – National Judicial Caseload Profile*, *supra* n.24.

[31]    U.S. District Courts, *Current Judicial Vacancies*, https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last visited June 3, 2024).

[32]    *Id.*

Therefore, the Court should decline to transfer to a Texas district, if, as expected, Defendants make that request.

## CONCLUSION

The District of Nevada is the most suitable transferee district and Chief Judge Du will continue to steer this litigation on a prudent course.  Nine of the 11 cases have been consolidated in the District of Nevada, and the Nevada Plaintiffs are already effectively collaborating to litigate the allegations first raised in *Rosenbaum*.  Starting over in the District of New Mexico, Western District of Texas, Northern District of Texas, or Southern District of Texas would be an inefficient waste of party and judicial resources.  The Nevada Plaintiffs respectfully request that the Panel transfer and centralize the Related Actions before Chief Judge Du in the District of Nevada.  In the alternative, the Nevada Plaintiffs respectfully request that the Panel transfer and centralize the Related Actions in the District of New Mexico.

DATED: June 3, 2024

Respectfully Submitted,

*/s/Patrick McGahan*

**EGLET ADAMS EGLET HAM & HENRIOD**
Robert T. Eglet
Artemus W. Ham, IV
Erica D. Entsminger
400 South Street, Suite 400
Las Vegas, Nevada 89101
Tel: (702): 450-5400
Fax: (702) 450-5451
eservice@egletlaw.com

*Local Counsel for Plaintiffs Andrew Caplen Installations LLC and Edward Allegretti, d/b/a Alfred Auto Center, Plaintiff Western Cab Company*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Brent W. Johnson
Benjamin Brown

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Patrick McGahan
Michael Srodoski
Isabella De Lisi
156 S Main Street
P.O. Box 192
Colchester, CT 06415
Tel: (860) 537-5537
pmcgahan@scott-scott.com
msrodoski@scott-scott.com
idelisi@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Patrick J. Coughlin
Carmen Medici
Fatima Brizuela
Daniel J. Brockwell
600 W. Broadway, Suite 3300

17

Robert W. Cobbs
Nina Jaffe-Geffner
1100 New York Avenue NW, 5th Floor
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
bjohnson@cohenmilstein.com
bbrown@cohenmilstein.com
rcobbs@cohenmilstein.com
njaffegeffner@cohenmilstein.com

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Michael Eisenkraft
Christopher Bateman
Aaron Marks
88 Pine Street, 14th Floor
New York, New York 10005
Telephone: (212) 883-7797
meisenkraft@cohenmilstein.com
cbateman@cohenmilstein.com
amarks@cohenmilstein.com

*Counsel for Plaintiffs Andrew Caplen Installations LLC and Edward Allegretti, d/b/a Alfred Auto Center*

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Brent W. Johnson
Robert W. Cobbs
1100 New York Avenue NW, 5th Floor
Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699
bjohnson@cohenmilstein.com
rcobbs@cohenmilstein.com

**COHEN MILSTEIN SELLERS & TOLL PLLC**
Michael Eisenkraft
88 Pine Street, 14th Floor
New York, New York 10005
Tel: (212) 883-7797
meisenkraft@cohenmilstein.com

San Diego, CA 92101
Tel: (619) 233-4565
pcoughlin@scott-scott.com
cmedici@scott-scott.com
fbrizuela@scott-scott.com
dbrockwell@scott-scott.com

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
Karin E. Garvey
Patrick Rodriguez
230 Park Ave., 17th Floor
New York, NY 11069
Tel: (212) 223-6444
kgarvey@scott-scott.com
prodriguez@scott-scott.com

**MORRIS, SULLIVAN & LEMKUL, LLP**
Christopher A. Turtzo
3960 Howard Hughes Parkway, Suite 400
Las Vegas, NV 89169
Tel: (702) 405-8100
Fax: (702) 405-8101
turtzo@morrissullivanlaw.com

*Local Counsel for Plaintiffs Daniel Rosenbaum, Reneldo Rodriguez, and Thomas Caron*

**FREED KANNER LONDON & MILLEN LLC**
Matthew W. Ruan
Douglas A. Millen
Michael E. Moskovitz
100 Tri-State International, Suite 128
Lincolnshire, Illinois 60069
Tel: (224) 632-4500
mruan@fklmlaw.com
dmillen@fklmlaw.com
mmoskovitz@fklmlaw.com

**FREED KANNER LONDON & MILLEN LLC**
Kimberly A. Justice
Jonathan M. Jagher
923 Fayette Street

*Counsel for Plaintiff Western Cab Company*

**MUCKLEROY LUNT, LLC**
Martin A. Muckleroy
6077 S. Fort Apache Rd., Ste 140
Las Vegas, NV 89148
Tel: (702) 907-0097
Fax: (702) 938-4065
martin@muckleroylunt.com

*Local Counsel for These Paws Were Made For Walkin' LLC*

**LOCKRIDGE GRINDAL NAUEN PLLP**
Brian D. Clark
Rebecca A. Peterson
Arielle S. Wagner
100 Washington Avenue S, Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
Fax: (612) 339-0981
bdclark@locklaw.com
rapeterson@locklaw.com
aswagner@locklaw.com

**LOCKRIDGE GRINDAL NAUEN PLLP**
Stephen J. Teti
265 Franklin St., Suite 1702
Boston, MA 02110
Tel.: (617) 456-7701
sjteti@locklaw.com

*Counsel for These Paws Were Made For Walkin' LLC*

**LAW OFFICES OF ANDREW M. LEAVITT, ESQ.**
Robert F. Purdy
633 South Seventh Street
Las Vegas, NV 89101
Tel: (702) 382-2800
Fax: (702) 382-7438
Robert.purdy@andrewleavittlaw.com

*Local Counsel for Plaintiff Laurie Olsen Santillo, Plaintiffs Brian Courtmanche, Laura*

Conshohocken, Pennsylvania 19428
Tel: (610) 234-6486
kjustice@fklmlaw.com
jjagher@fklmlaw.com

**AETON LAW PARTNERS LLP**
Jonathan M. Shapiro
311 Centerpoint Drive
Middletown, Connecticut 06475
Tel: (860) 724-2160
jms@aetonlaw.com

*Counsel for Plaintiffs Brian Courtmanche, Laura J. Faber, Patricia Mancieri, David Silver, and Josselyn's Getaway Log Cabins LLC*

**THE BOURASSA LAW GROUP**
Mark J. Bourassa, Esq.
Jennifer A. Fornetti, Esq.
Valerie S. Christian Esq.
2350 W. Charleston Blvd., Suite 100
Las Vegas, Nevada 89102
Tel: (702) 851-2180
Fax: (702) 851-2189
mbourassa@blgwins.com
jfornetti@blgwins.com
vchristian@blgwins.com

*Local Counsel for John Mellor*

**GROSS KLEIN PC**
Stuart G. Gross
Travis H. Smith
The Embarcadero
Pier 9, Suite 100
San Francisco, CA 94111
Tel: (415) 671-4628
Fax: (415) 480-6688
sgross@grosskleinlaw.com
tsmith@grosskleinlaw.com

**SCHNEIDER WALLACE COTTRELL KONECKY, LLP**
Todd M. Schneider
Matthew S. Weiler

*J. Faber, Patricia Mancieri, David Silver,*
*and Josselyn's Getaway Log Cabins LLC,*
*Plaintiff Richard Beaumont*

**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
Jennifer Sprengel
Daniel O. Herrera
Kaitlin Naughton
135 South LaSalle Street, Suite 3210
Chicago, IL 60603
Tel: 312.782.4880
Fax: 312.782.4485
jsprengel@caffertyclobes.com
dherrera@caffertyclobes.com
knaughton@caffertyclobes.com

*Counsel for Plaintiff Laurie Olsen Santillo*

**PEARSON WARSHAW, LLP**
Daniel L. Warshaw
Bobby Pouya
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Tel: (818) 788-8300
Fax: (818) 788-8104
dwarshaw@pwfirm.com
bpouya@pwfirm.com

**PEARSON WARSHAW, LLP**
Jill M. Manning
Neil J. Swartzberg
555 Montgomery St., Suite 1205
San Francisco, California 94111
Tel: (415) 433-9000
Fax: (415) 433-9008
jmanning@pwfirm.com
nswartzberg@pwfirm.com

*Counsel for Plaintiff Richard Beaumont*

2000 Powell Street, Suite 1400
Emeryville, CA 94608
Tel: (415) 421-7100
Fax: (415) 421-7105
tschneider@schneiderwallace.com
mweiler@schneiderwallace.com

*Counsel for John Mellor*

**SALTZMAN MUGAN DUSHOFF**
Matthew T. Dushoff, Esq.
William A. Gonzales, Esq.
1835 Village Center Circle
Las Vegas, Nevada 89134
Tel: (702) 405-8500
Fax: (702) 405-8501
mdushoff@nvbusinesslaw.com
wgonzales@nvbusinesslaw.com

*Local Counsel for Barbara and Phillip*
*MacDowell*

**SPECTOR ROSEMAN & KODROFF,**
**P.C.**
William G. Caldes
Jeffrey L. Spector
Diana J. Zinser
2001 Market Street, Suite 3420
Philadelphia, PA 19103
Tel: (215) 496-0300
Fax: (215) 466-6611
bcaldes@srkattorneys.com
jspector@srkattorneys.com
dzinser@srkattorneys.com

**REINHARDT WENDORF &**
**BLANCHFIELD**
Garrett D. Blanchfield
Roberta A. Yard
332 Minnesota Street, Suite W1050
St. Paul, MN 55101
Tel: (651) 287-2100
g.blanchfield@rwblawfirm.com
r.yard@rwblawfirm.com

**MCLAFFERTY LAW FIRM, P.C.**
David P. McLafferty
923 Fayette Street
Conshohocken, PA 19428
Tel: (610) 940-4000
dmclafferty@mclaffertylaw.com

*Counsel for Barbara and Phillip MacDowell*

21