**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

| | |
|---|---|
| IN RE: SHALE OIL ANTITRUST LITIGATION | MDL No. 3119 |

**DEFENDANTS' RESPONSE TO PLAINTIFF FOOS, ET AL.'S
MOTION TO TRANSFER RELATED ACTIONS FOR
CONSOLIDATED OR COORDINATED PRETRIAL PROCEEDINGS**

Defendants Permian Resources Corporation, Chesapeake Energy Corporation, Continental Resources, Inc., Diamondback Energy, Inc., EOG Resources, Inc., Hess Corporation, Occidental Petroleum Corporation, and Pioneer Natural Resources Company[1] (together, "Defendants") submit this response to Plaintiffs Matthew E. Foos, Andrew A. Hund, Michael B. Ackerman, Jarrod Johnson, and Mackey and Sons Inc.'s (together, "Movants") Motion to Transfer Related Actions for Consolidated or Coordinated Pretrial Proceedings to the United States District Court for the District of New Mexico ("Motion"). There are currently 11 pending actions filed in two federal districts ("Related Actions"). Nine actions have been consolidated in the District of Nevada under *Rosenbaum et al. v. Permian Res. Corp. et al.,* No. 2:24-cv-00103 (D. Nev. Jan. 12, 2024)

---

[1] Plaintiffs in *Brown v. Permian Res. Corp.*, No. 1:24-cv-00430 (D.N.M. May 6, 2024), named "Exxon Mobil Corporation f/k/a Pioneer Natural Resources Company" as a defendant, which is why Exxon Mobil Corporation has appeared for purposes of Defendants' Response. But Exxon Mobil Corporation was improperly named in that suit because Pioneer continues to operate as a legally distinct entity that is wholly owned by Exxon Mobil Corporation.

("Nevada Actions"),[2] and two cases are pending in the District of New Mexico ("New Mexico Actions"). *See Foos v. Permian Res. Corp.*, No. 1:24-cv-00361 (D.N.M. Apr. 15, 2024); *Brown v. Permian Res. Corp.*, No. 1:24-cv-00430 (D.N.M. May 6, 2024).

Defendants believe these matters should be transferred to their proper forum in the Midland/Odessa Division of the Western District of Texas ("Midland Division"), and Defendants moved under 28 U.S.C. § 1404 to transfer the nine Nevada Actions to Texas well before Movants filed their copycat case in the District of New Mexico. That motion is fully briefed and awaiting decision. Defendants also intend to move to transfer the New Mexico Actions, with the goal of consolidating all of these cases in Texas. The overwhelming majority of witnesses and evidence relevant to this case are in Texas, and the Midland Division will be by far the most convenient for the parties in these cases, *including* the large majority of Plaintiffs. For the same reasons, if the Judicial Panel on Multidistrict Litigation ("Panel") decides to centralize the cases, Defendants support centralization of the cases in the Midland Division, not in New Mexico as Movants have proposed.

Movants mischaracterize New Mexico as factually and geographically central to the issues in the Related Actions. In fact, the weak connections between New Mexico and the Related Actions are not relevant to the key considerations of the Panel, *i.e.*, where witnesses and evidence may be found. *See* Memorandum in Support of Motion at 1, 8. New Mexico's primary connection to the Related Actions is that a small portion of the shale oil resting in the Permian Basin (which

---

[2] The following cases have been consolidated under *Rosenbaum*, No. 2:24-cv-00103: *Andrew Caplen Installations*, No. 2:24-CV-00150; *These Paws Were Made For Walkin'*, No. 2:24-cv-00164; *Courtmanche*, No. 2:24-cv-00198; *Mellor*, No. 2:24-cv-00253; *Santillo*, No. 2:24-cv-00279; *Beaumont*, No. 2:24-cv-00298; *MacDowell* No. 2:24-cv-00325; and *Western Cab Company*, No. 2:24-cv-00401. *Rosenbaum*, No. 2:24-cv-00103, Dkt. 31, 147, 159, 173.

is located predominantly in Texas) reaches into two New Mexico counties.[3] What matters to the centralization analysis is not where the oil lies, but rather where the evidence and witnesses are likely to be located—which is overwhelmingly in Texas. Importantly, Defendants do not make strategic decisions in New Mexico regarding oil resources and do not store significant documents in New Mexico. Ex. A ¶¶ 5-7; Ex. B ¶ 10; Ex. C ¶ 7; Ex. D ¶ 6; Ex. E ¶ 5; Ex. F ¶ 9; Ex. G ¶ 8; Ex. H ¶ 7.

Movants ignore Texas, which is the clear center of gravity for these cases. The domestic shale industry is based largely in Texas.[4] Most of the alleged relevant acts occurred in Texas— while *none* occurred in New Mexico. *See, e.g.*, *Foos* Compl. No. 1:24-cv-00361, Dkt. 1 ¶¶ 60–69. Five of eight Defendants are headquartered in Texas—while *none* are in New Mexico. Ex. A ¶ 3; Ex. B ¶¶ 3–4; Ex. C ¶ 2; Ex. D ¶ 3; Ex. E ¶ 3; Ex. F ¶ 2; Ex. G ¶ 2. And the bulk of the Permian Basin and—more importantly—the personnel who make decisions about production in the Permian Basin are in Texas. For these reasons, Defendants moved under 28 U.S.C. § 1404 to transfer the Nevada Actions to the Midland Division or, alternatively, to the Northern District or Southern District of Texas. Defendants likewise are preparing a motion to transfer the New Mexico Actions pursuant to the first-to-file rule.[5]

---

[3]  *Permian Basin Overview*, Shale Experts, *available at* https://www.shaleexperts.com/plays/permian-basin/Overview (last visited May 24, 2024). Even these two counties are closer and more convenient to Midland, TX than they are to Albuquerque, NM where the two New Mexico cases have been filed.

[4] *The 'Monster' Texas Oil Field That Made the U.S. a Star in the World Market*, NY Times (Feb 3, 2019), *available at* https://www.nytimes.com/2019/02/03/business/energy-environment/texas-permian-field-oil.html.

[5] Courts in the Tenth Circuit recognize the "general rule" that "the court which first obtains jurisdiction should be allowed to first decide issues of venue." *Hospah Coal Co. v. Chaco Energy Co.*, 673 F. 2d 1161, 1163–64 (10th Cir. 1982).

For the convenience of the parties and to promote a just and efficient resolution of the Related Actions, these cases should be transferred to or, should the Panel so decide, centralized in the Midland Division or, alternatively, the Dallas Division of the Northern District of Texas or the Houston Division of the Southern District of Texas.

## FACTUAL BACKGROUND

Twenty-six named Plaintiffs filed 11 complaints—nine in the District of Nevada and two in the District of New Mexico. Through nearly identical allegations, the complaints claim that Defendants, current and former independent producers of shale oil, agreed with each other to raise oil prices by restricting domestic shale oil production in violation of Section 1 of the Sherman Act and the laws of several states and the District of Columbia. *Foos* Compl. ¶¶ 1–16. According to Plaintiffs, this purported conspiracy increased the price of certain products, such as gasoline, derived from crude oil. *Id*. ¶ 120. Plaintiffs seek certification of numerous classes, as well as nationwide injunctive relief on their federal antitrust claim and an array of damages on their state-law claims.

The shale oil industry in the United States is centered in Texas. Five Defendants are headquartered in Texas. Ex. A ¶ 3; Ex. B ¶¶ 3–4; Ex. C ¶ 2; Ex. D ¶ 3; Ex. E ¶ 3; Ex. G ¶ 2. Seven out of eight Defendants currently produce shale oil or have shale oil operations in Texas. Ex. A ¶ 6; Ex. B ¶ 9; Ex. C ¶ 6; Ex. D ¶ 10; Ex. E ¶ 6; Ex. F ¶ 5; Ex. G ¶ 4. And the large majority of Defendants make their major operational decisions out of Texas. Ex. A ¶ 7; Ex. B ¶¶ 10; Ex. C ¶ 4; Ex. D ¶ 6; Ex. E ¶ 5; Ex. F ¶ 4; Ex. G ¶ 4. Specifically:

- **Diamondback** is headquartered in Midland, Texas, where all oil production decisions are made. Ex. A ¶ 3. Twenty of Diamondback's 23 corporate officers work in Midland. *Id*. ¶ 4. Approximately 71% of its employees work in the Western District of Texas. *Id*. ¶ 4.

Diamondback does not have any offices in New Mexico, nor does it directly sell shale oil to customers in New Mexico. *Id*. ¶¶ 8–9.

- **Permian** is headquartered in Midland, Texas, where approximately 40% of its employees work. Ex. B ¶¶ 3–4. All major oil production-related decisions are made in Midland, where nearly all of its officers work. *Id*. ¶ 10. Permian has a small office in Eunice, New Mexico, where only 5% of employees work. *Id*. ¶ 8. Additionally, approximately 18% of its employees work in San Angelo, Texas, which is in the San Angelo Division of the Northern District of Texas (*id*. ¶ 6), and approximately 9% work in The Woodlands, Texas, which is in the Southern District of Texas. *Id*. ¶ 7.

- **Pioneer** is headquartered in Irving, Texas, and all of its offices are located in Texas. Ex. C ¶ 2. Pioneer conducts all its oil activities from its offices in Texas or at the oil and gas properties that it operates in Texas, and Pioneer makes all decisions concerning the production and sale of oil exclusively in Texas. *Id*. ¶ 4. Approximately 78% of employees involved in Pioneer's oil production operations, including all 20 employees responsible for production accounting, work in Midland County, Texas. *Id*. ¶¶ 8–9. Pioneer does not have any office, officers, or employees in New Mexico, nor does it operate any oil and gas properties, sell any shale oil, or otherwise make any decisions about the production or sale of oil in New Mexico. *Id*. ¶ 7.

- **EOG** is headquartered in Houston, Texas (Ex. D ¶ 3), where approximately 36% of its employees work. *Id.* ¶ 8. Approximately 36% of EOG's employees work within the Western District of Texas (*id*. ¶ 13), 6% of employees work in the Northern District of Texas (*id*. ¶ 14), and 40% work in the Southern District of Texas. *Id*. ¶ 15. EOG has a small field office in Jal, New Mexico (117 employees), which is nine miles from the Texas

border, but all oil produced from wells in New Mexico is managed from the Midland, Texas office. *Id*. ¶ 9.

- **Occidental** is headquartered in Houston, Texas, where the majority of its executive team and approximately 25% of its global workforce (including officers, employees and contractors) is based. Ex. E ¶¶ 3, 5. Approximately 21% of Occidental's domestic workforce is based in and around the Permian Basin, including in Midland, Texas. *Id*. Occidental has an office in Carlsbad but approximately 87% of Occidental's Permian Basin workforce is based in Texas compared to only 13% in New Mexico.[6] Occidental also maintains a large office in Dallas, which is in the Dallas Division of the Northern District of Texas. *Id*.

- **Hess** is headquartered in New York, New York, where approximately 50 employees work. Ex. F ¶ 2. Hess operates a regional headquarters in Houston, Texas. *Id*. ¶ 3. Approximately 870 Hess employees work out of this location, more than at any other location. *Id*. Nearly all of Hess's shale oil exploration-and-production leadership team, and all of that team's support functions, are based in Houston. *Id*. ¶ 4. Hess does not maintain any office, sell any shale oil, or otherwise conduct business in New Mexico. *Id*. ¶ 9.

- **Continental** is headquartered in Oklahoma City, Oklahoma. Ex. G ¶ 2. Continental maintains offices in Odessa, Texas, and Monahans, Texas, which are both within the Western District of Texas and approximately 26 and 57 miles from Midland, respectively. *Id*. ¶ 5. Continental has no offices, officers, or employees in New Mexico nor does it make any decisions within New Mexico about the production or sale of oil. *Id.* ¶ 8.

---

[6] Occidental plans to open an office in Santa Fe in the near future, but this office will have only one full-time employee.

- **Chesapeake** is headquartered in Oklahoma City, Oklahoma. As of February 1, 2023, Chesapeake has sold the overwhelming majority of its shale oil assets and leases. Ex. H ¶ 2. During the relevant time period, Chesapeake's production of shale oil was, in part, in the Eagle Ford trend, located in South Texas. *Id*. ¶ 3. During that time, it employed over 200 employees and over 250 contractors in Texas. *Id*. ¶ 5. Chesapeake did not operate in New Mexico or maintain any offices there during the relevant time period. *Id*. ¶ 7.

## ARGUMENT

**I. These Actions Should be Consolidated in Texas Through Either Section 1404 or 1407**

### A. Defendants Have Moved to Transfer under Section 1404 in Nevada and Plan to Move to Transfer in New Mexico

In its May 13 Notice, the Panel directed the parties to "address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the subject cases)." MDL No. 3119, Dkt. 5. Defendants have actively sought relief through 28 U.S.C. § 1404, filing a motion to transfer the nine Nevada Actions on March 22, 2024, well before the *Foos* complaint was filed in New Mexico on April 15, 2024. Defendants also intend to move to transfer both New Mexico Actions under the first-to-file rule so that all the Related Actions are consolidated together in Texas.

Because of the Relevant Actions' overwhelming connections to Texas and the lack of significant connections to Nevada and New Mexico, Section 1404 presents a viable path to transfer to the appropriate and most convenient venue. However, if the Panel determines to act at this time to centralize the cases, Defendants support centralization in the Midland Division.

**B.  Defendants Alternatively Believe Centralization in the Midland Division under Section 1407 is Appropriate**

Civil actions involving "one or more common questions of fact [that] are pending in different districts . . . may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407(a); s*ee also In re 23andMe, Inc., Customer Data Sec. Breach Litig.*, No. MDL 3098, 2024 WL 1596923, at \*1 (J.P.M.L. Apr. 11, 2024) (consolidating actions that involved "overlapping nationwide and statewide class actions of 23andMe customers, and [] virtually identical claims").

The 11 complaints involve virtually identical allegations and claims for relief on behalf of a nationwide injunctive relief class and various proposed state classes. *See*, *e.g.*, *Foos* Compl., ¶¶ 125–135; *Rosenbaum* Compl., ¶¶ 133–207. The complaints identify the same list of meetings, largely held over several years of CERAWeek Conferences in Houston, Texas, where Defendants allegedly conspired with OPEC. *See, e.g*., *Foos* Compl., ¶¶ 60–69; *Rosenbaum* Compl. ¶¶ 58–77. Chief Judge Du in the District of Nevada acknowledged the overlapping nature of the Nevada Actions when she consolidated the matters on May 16, 2024. Consolidation Order, *Rosenbaum*, 2:24-cv-00103, Dkt. 173 (consolidating all "actions alleging that Defendants conspired to constrain the production of shale oil to increase the price of oil products assigned to this Court").

The complaints in the New Mexico Actions are nearly identical to those in the Nevada Actions. The *Foos* action, filed four months after the *Rosenbaum* complaint, is essentially copied and pasted from the first-filed *Rosenbaum* complaint, down to the headings, footnotes, and graphics. *Compare Foos* Compl., pp. 2–58, *with Rosenbaum* Compl., pp. 2–51. It includes over 100 substantive paragraphs that are identical to the *Rosenbaum* complaint and 26 of the same claims—the Sherman Act claim and 25 of the same state damage claims.

Given the identical allegations involving the same eight Defendants across the Related Actions, Defendants agree that—to the extent transfer under § 1404 is insufficient—transfer to a district for consolidated or coordinated proceedings would serve the "convenience of parties and witnesses and . . . promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). [7]

## II.  If it Takes Action, the Panel Should Centralize the Cases in Texas

The Panel considers several common-sense factors when choosing a transferee forum, including: (1) the factual nexus to the litigation, (2) the location of the relevant witnesses and evidence, (3) the convenience and accessibility of the forum for parties and witnesses, and (4) the positions of the parties. *See, e.g.*, *In re Terrorist Attacks on Sept. 11, 2001*, 295 F. Supp. 2d 1377, 1379 (J.P.M.L. 2003); *In re Farxiga (Dapagliflozin) Prod. Liability Litig.,* 273 F. Supp. 3d 1380, 1382 (J.P.M.L. 2017); *In re A-Power Energy Generation Syst., Ltd. Sec. Litig.,* 829 F. Supp. 2d 1382, 1383 (J.P.M.L. 2011); *In re Orleans Homebuilders, Inc., Fair Lab. Standards Act Litig.*, 559 F. Supp. 2d 1411, 1411 (J.P.M.L. 2008).

Each of these factors overwhelmingly weighs in favor of Texas.

### A.  Texas is the Factual Nexus and Center of Gravity

Texas has the clearest and strongest factual nexus to the Related Actions. The U.S. shale oil industry—the core focus of this litigation—is centered in Texas. *See supra*, note 3; *see also In re Sundstrand Data Control, Inc. Pat. Litig.*, 443 F. Supp. 1019, 1021 (J.P.M.L. 1978) (transferring

---

[7] The parallel allegations will entail heavily overlapping discovery, which would be more efficiently performed by a single court. *See In re 23andMe, Inc., Customer Data Sec. Breach Litig.*, 2024 WL 1596923, at *1 (centralizing because "Discovery in all actions will focus on how 23andMe's system was breached"). Further, these actions are all pending at a similarly early stage, where no dispositive motion has been filed or ruled upon and no documents have been produced.  *See In re Nine W. LBO Sec. Litig.*, 464 F. Supp. 3d 1383, 1386 (J.P.M.L. 2020) ("[T]here has been no significant activity in any action such that transfer to another district would disrupt its efficient progress.").

to jurisdiction where no related matter was pending because related action jurisdictions did not have a strong nexus to the facts and "little discovery . . . could be expected to occur in any of [these jurisdictions]").

Each complaint begins with allegations about shale oil production in Texas. According to Plaintiffs, the first commercial shale operation began in Texas in 2002. *Foos* Compl., ¶ 47; *Rosenbaum* Compl., ¶ 45. Plaintiffs allege that the commercial shale industry grew considerably from 2008 through 2015, a period dubbed the "Shale Revolution," when shale oil production led to the fastest increase in crude oil production in U.S. history. *Foos* Compl., ¶ 47; *Rosenbaum* Compl., ¶ 45. The largest part of that production took place, and continues to take place, in Texas. *Foos* Compl., ¶ 54 n.23; *Rosenbaum* Compl., ¶ 52 n.23. Two of the top three shale oil "plays"— geographic areas where shale formations contain significant amounts of oil—in the U.S. are in Texas. *Foos* Compl., ¶ 54 n.23; *Rosenbaum* Compl., ¶ 52 n.23. This includes Eagle Ford and the Permian Basin, which is located predominantly in Texas with only a small portion in New Mexico. *Foos* Compl., ¶ 54 n.23; *Rosenbaum* Compl., ¶ 52 n.23.

Unsurprisingly given its centrality to the shale oil industry, Texas is the setting of the vast majority of the specific factual allegations in Plaintiffs' complaints. Key allegations across all of the complaints involve alleged conspiratorial meetings over several years at CERAWeek, an energy conference hosted each year in Houston. There are *no* specific allegations of conduct occurring in Nevada or New Mexico.

Indeed, Nevada's only connection to the facts of the case is that three named plaintiffs, out of 26, are located there. The lack of connection between the alleged facts and Nevada was so pronounced that the judge who was originally assigned the Nevada Actions (Judge Gloria M. Navarro) *sua sponte* called a hearing to address "whether venue is proper in Nevada and whether

10

this Court may properly exercise personal jurisdiction over the Defendants." Order, *Rosenbaum*, 2:24-cv-00103, (Mar. 4, 2024), Dkt. 34.[8]

Movants emphasize Defendants' shale oil production in New Mexico.[9] But the *Foos* complaint itself makes clear that production sites are much less important than the location where production *decisions* were made. None of those decisions were made in New Mexico, nor are those decision makers residents of New Mexico. The predominance of production decisions for the Permian Basin were made either in corporate headquarters or in regional offices, which for several Defendants are in or near Midland, Texas, and for most others are elsewhere in Texas. Ex. A ¶ 3; Ex. B ¶¶ 3–4, 10; Ex. C ¶¶ 2, 4; Ex. D ¶¶3, 6–7; Ex. E ¶¶  3; Ex. F ¶¶ 2, 4; Ex. G ¶¶ 4.

The location of relevant witnesses and documents—*i.e.*, the "litigation's center of gravity"—is also a critically important factor to the Panel's transfer analysis. *In re Nine W. LBO Sec. Litig.*, 464 F. Supp. 3d at 1385–86 (transferring matters to the Southern District of New York, even though no matters were pending there, because two parties were headquartered there, multiple witnesses were located there, and all defendants indicated a preference to be centralized there). In fact, the Panel has prioritized this factor above the location of any pending actions. *Id*. at 1386 (fact that a related action was not pending in the transferee district was "not a bar to centralization there" because witnesses and documents were located there).[10]

---

[8] At the hearing, Judge Navarro expressed she did not "know why these cases are all here" and invited the parties to brief whether Nevada was the most convenient venue. *Rosenbaum*, 2:24-cv-00103, Mar. 4, 2024 Hr'g Tr. at 10–14. Following the hearing, Judge Navarro recused herself and the cases were reassigned to Judge Du. Order Granting Plaintiffs' Motion for Recusal, *Rosenbaum*, 2:24-cv-00103 (Apr. 4, 2024), Dkt. 162.

[9] Even if the location of shale oil production from the Permian Basin was a determining factor, the prominent majority of the Permian Basin, and of its oil production, is in Texas, not New Mexico.

[10] Further, the Panel has recognized that when, as here, "potential plaintiffs and putative class members will reside in every corner of the country, the location of the currently filed cases is not

i.    *All Defendants Are Either Headquartered in Texas or Have Major Operations in Texas.*

The Panel has recognized that "potentially relevant databases, documents, witnesses, and other evidence" are likely to be found at or near defendants' headquarters. *See In Re MOVEit Customer Data Sec. Breach Litig.*, 2023 WL 6456749, at *3 (J.P.M.L. Oct. 4, 2023). This consideration weighs in favor of transfer as five of the eight Defendants have headquarters in Texas, seven of the eight have offices in Texas, and the one without a Texas office had significant operations in Texas during the relevant time period of the allegations.[11] *See* Ex. A ¶¶ 3, 6–7; Ex. B ¶¶ 3–4, 10; Ex. C ¶¶ 2, 4; Ex. D ¶¶ 3, 6; Ex. E ¶¶ 3; Ex. F ¶¶ 2–4; Ex. G ¶¶ 2, 6; Ex. H ¶¶ 4-5, 7 *see also In re Treasury Sec. Auction Antitrust Litig.*, 148 F. Supp. 3d 1360, 1361–62 (J.P.M.L. 2015) (transferring to the Southern District of New York because "[n]early all defendants have their U.S. headquarters in or near New York or conduct their operations concerning Treasury securities there"). Thus, the large majority of potentially relevant documents and production and sales data are in Texas. *See In re: BP p.l.c. Sec. Litig.*, 734 F. Supp. 2d at 1379 (transferring to Texas because "plaintiffs' counsel will undoubtedly pursue significant discovery into BP's Gulf Coast operations, which are based primarily in Houston, Texas. Relevant documents and witnesses are thus likely to be located in the Southern District of Texas.").

*None* of the Defendants have headquarters in Nevada or New Mexico, have any significant number of executives there, or make production-related decisions there. As the map below shows, Texas—and specifically Midland—is the most appropriate forum for this case: many Defendants

---

a particularly important factor in [the Panel's] decision." *See In re: BP p.l.c. Sec. Litig.,* 734 F. Supp. 2d 1376, 1379 (J.P.M.L. 2010). Indeed, all Plaintiffs are seeking injunctive relief under the Sherman Act on behalf of consumers nationwide. Moreover, Plaintiffs' damages claims are brought on behalf of purported classes encompassing 32 states plus the District of Columbia.
[11] Before selling its shale oil business, Chesapeake conducted oil production operations in Texas during the period at issue in this lawsuit. Ex. H ¶¶ 4-5, 7.

maintain headquarters or offices in Midland, and most of the individuals listed in the complaints could conveniently access Midland.

*Locations of Defendants' Headquarters and Offices, and Individuals Cited in Complaints*



ii.     *The Majority of Defendants' Employees and Executives are Based in Texas.*

Defendants' employees who could serve as key witnesses are overwhelmingly located in Texas. Ex. A ¶ 4; Ex. B ¶¶ 4–7; Ex. C ¶ 3; Ex. D ¶ 8; Ex. E ¶ 5; Ex. F ¶ 3. *In re Sundstrand Data Control, Inc. Pat. Litig*., 443 F. Supp. 1019, 1021 (J.P.M.L. 1978) (transferring to Washington, where no cases were pending, and concluding that Washington had a "substantial connection" because "most of the relevant documents and witnesses on the central issue . . . are located in the vicinity of that district").

13

No Defendant's workforce is based primarily or significantly in New Mexico. Moreover, the three offices of Defendants located in the Permian Basin in New Mexico are much closer to Midland (e.g., 80 road miles from Jal, NM; 147 miles from Carlsbad; or 83 road miles from Eunice), where Defendants propose to centralize, than to Albuquerque (366 road miles from Jal, NM; 283 miles from Carlsbad; or 332 road miles from Eunice), where the Movants propose to centralize. Thus, there is no basis on which Movants' proposal makes sense.

   iii. *Most Individuals Identified in the Complaints, Including Third-Party Witnesses, Reside in Texas.*

The individuals who are specifically identified in the complaints, who are alleged to have communicated with OPEC and each other in furtherance of the conspiracy, are predominantly located in Texas.[12]

| Name | Company | Position | District |
|------|---------|----------|----------|
| **Scott Sheffield** | Pioneer | Former CEO | Northern District of Texas |
| **Tim Dove** | Pioneer | Former CEO | Northern District of Texas |
| **Vicki Hollub** | Occidental | President and CEO | Southern District of Texas |
| **Tim Leach** | Concho Resources Inc.(now ConocoPhillips) | Former CEO | Southern District of Texas |
| **Travis Stice** | Diamondback | CEO | Western District of Texas |
| **Bill Thomas** | EOG | Former CEO and Chairman of the Board | Western District of Texas |
| **John Hess** | Hess Corp. | CEO | Southern District of New York |
| **Mark Papa** | Centennial | Former CEO of Centennial, Founder of EOG | Southern District of Texas |

---

[12] Defendants do not concede that all of these witnesses are necessary or relevant; they are specifically referenced here only because they are identified in the complaints.

| William Berry | Continental | Former CEO | Southern District of Texas |
|---|---|---|---|
| Harold Hamm | Continental | Former CEO, Founder, Executive Chairman | Western District of Oklahoma |
| Robert Douglas Lawler | Chesapeake | Former CEO of Chesapeake, Former President & CEO of Continental | Western District of Oklahoma |
| Domenic Dell'Osso | Chesapeake | CEO | Western District of Oklahoma |

Movants misleadingly cite *In re New Mexico Natural Gas Antitrust Litigation* in arguing that New Mexico is a key location of relevant documents and witnesses. Memorandum in Support of Motion at 9. But that case is inapposite, as the allegations in that litigation centered on wrongful conduct *undertaken* in New Mexico and a New Mexico government agency that was the key source of potentially relevant discovery. 482 F. Supp. 333, 337 (J.P.M.L. 1979). There are no such facts here. While some Defendants operate wellheads and produce oil in New Mexico, only three Defendants have small offices or field offices there. Defendants' respective offices outside of New Mexico are where executives make production-related decisions and documents and data are stored. And none of the allegations in the complaints allege wrongful conduct in New Mexico.

### B.  Texas Is a Convenient and Accessible Forum

The Panel prefers to transfer cases to a "geographically central forum" that is "convenient and accessible for the parties and witnesses." *In re Nutramax Cosamin Mktg. & Sales Pracs. Litig.*, 988 F. Supp. 2d 1371, 1372 (J.P.M.L. 2013) (transferring matters to Maryland even though no relevant cases were pending there, because it would be "convenient and accessible" given that "[a defendant] is headquartered in the district, and thus relevant documents and potential witnesses are likely to be found there"). Midland is convenient and accessible for the relevant parties, as explained above, because of its location close to headquarters, offices, documents and data, and likely relevant witnesses. As shown on the map above, many Defendants have offices or

headquarters in Midland. In fact, only two Defendants (Chesapeake and Hess) do not maintain an office in Midland, and those Defendants may access Midland via a short flight: the Midland International Air and Space Port conveniently connects travelers to hub airports in Dallas/Fort Worth, Phoenix, Austin, Houston, Denver, and Las Vegas.[13]

Houston, in the Southern District, and Dallas, in the Northern District, are also accessible. As the fourth[14] and ninth[15] largest cities in the United States, respectively, they offer hundreds of direct flights daily from across the country and hundreds of hotels in the downtown areas.[16]

### C. All Defendants Have Chosen Texas as Their First Choice Forum

The Panel also considers the parties' preferences when choosing a transferee forum, as it "must weigh the interests of all the plaintiffs and all the defendants and must consider multiple litigation as a whole in the light of the purposes of the law." *In re Childrens Books Litig.*, 297 F. Supp. 385, 386 (J.P.M.L. 1968).

Here, Defendants' unanimous preference for transfer to Texas should weigh more heavily than the divided preferences of Plaintiffs. *In re: Body Science LLC Patent Litig.*, 883 F. Supp. 2d 1344, 1346 (J.P.M.L. 2012) (transferring to a district preferred by all defendants even though plaintiff sought a different district). *First*, the majority of the named Plaintiffs in the New Mexico and Nevada Actions are *not* residents of New Mexico or Nevada. The *Foos* and *Brown* Plaintiffs

---

[13] *Flight Schedule*, Midland International Air and Space Port,  (last visited May 29, 2024), available at https://www.flightaware.com/live/airport/KMAF.

[14] *About Houston*, Houstontx.gov (last visited May 24, 2024), *available at* https://www.houstontx.gov/abouthouston/houstonfacts.html.

[15] *Dallas State & Fun Facts*, Visit Dallas (last visited May 24, 2024), *available at* https://www.visitdallas.com/about/dallas-fun-facts/.

[16] *Bureau of Transportation Statistics*, United States Department of Transportation (last visited May 24, 2024). Houston's two major airports together served more than 22 million passengers in 2023, while Dallas' major airports recorded more than 24 million passengers in 2023.

in the New Mexico Actions represent only six of the 26 named Plaintiffs across the Related Actions. Of those six, only *one* is located in New Mexico. Similarly, all but two of the 17 named Plaintiffs in the Nevada Actions are based in states other than Nevada. *Second*, it is possible (perhaps likely) that new plaintiffs will file additional tag-along cases, given the nationwide scope of the proposed classes—meaning there could be further disagreement as to Plaintiffs' preferred forum while Defendants remain unanimous in their preference for Texas. And *third*, these cases are all nationwide class actions brought in part under the Sherman Act on behalf of all U.S. consumers, meaning Plaintiffs hail from every corner of the country. It is thus sensible to centralize in Texas, a convenient forum favored by all Defendants.

### III. Within Texas, the Western District of Texas, Midland Division is the Most Convenient and Appropriate Forum.

Defendants unanimously agree that the Western District of Texas, Midland Division is the appropriate forum within Texas.

Six of eight Defendants maintain operations in the Midland Division of the Western District of Texas. Permian and Diamondback are headquartered in Midland, where they maintain their executive management, large numbers of employees, and their production operations. Pioneer and EOG also maintain large offices in Midland and direct substantial production operations from those offices. For EOG and Permian, all of the shale oil production in New Mexico is directed from offices in Midland. Occidental and Continental likewise maintain operations there, where a substantial number of their respective domestic employees work. For the remaining two Defendants, the Western District is closer and more convenient to their headquarters (Chesapeake in Oklahoma City) or regional headquarters (Hess in Houston) than New Mexico or Nevada.

The Midland Division also has the expertise and capacity to take on an oil-related MDL. Experience and capacity are important, and often dispositive, factors that the Panel considers in its analysis. *See, e.g.*, *In re Janus Mut. Funds. Inv. Litig*., 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004).

Judge David Counts in the Midland Division of the Western District of Texas has significant experience hearing class action cases and cases in the oil and gas industry. He is also an efficient jurist, with a median time for ruling on motions for summary judgment of 78 days, well below the district median and well below that of Judge Garcia in New Mexico (426 day median time to rule on motions for summary judgment) and Judge Du in Nevada (224 day median time to rule on motions for summary judgment).[17] Judge Counts' experience as a magistrate judge from 2009 to 2018 also makes him uniquely well-suited for this antitrust class action, which will likely include complex discovery if it progresses to that point. Judge Counts would also have a deep well of precedent to draw from in the Western District, as the district is experienced in complex antitrust cases. Since 2009, the Western District has heard 97 antitrust cases, while the District of New Mexico, for instance, has heard only 19.[18] And as the functional headquarters of Permian Basin oil operations, the Western District is also abundantly experienced in cases involving the oil and gas industry.

---

[17] Judge David Counts, Motion Metrics Jan. 1, 2000 to Present, Courts and Judges, Lex Machina (last visited May 28, 2024); Judge Matthew L. Garcia, Motion Metrics Jan. 1, 2000 to Present, Courts and Judges, Lex Machina (last visited May 28, 2024); Chief Judge Miranda Mai Du, Motion Metrics Jan. 1, 2000 to Present, Courts and Judges, Lex Machina (last visited May 28, 2024).
[18] Western District of Texas, Overview, Lex Machina (last visited May 28, 2024); District of New Mexico, Overview, Lex Machina (last visited May 28, 2024).

IV. **In the Alternative, the Panel Should Centralize the Cases in the Northern District or the Southern District of Texas**

If the Panel determines that the Midland Division of the Western District of Texas is not an appropriate transferee forum, Defendants note they further unanimously agree on either the Dallas Division of the Northern District of Texas, or the Houston Division of the Southern District of Texas, as an alternative transferee court. Several Defendants have headquarters or operations in the Northern District, with a large number of their employees working there. For example, Pioneer is headquartered in Irving, Texas in the Dallas Division, where the majority of its employees and nearly all its officers work; Occidental has an office in Dallas; and EOG has an office in nearby Fort Worth, Texas. Given its central location within Texas, nearly all Defendants are headquartered or maintain a regional headquarters within convenient distance of the Dallas-Fort Worth area.

As for the Houston Division of the Southern District, EOG and Occidental are headquartered in Houston, where 40% and 25%, respectively, of their workers are based. Hess and Permian also have regional offices within the Houston Division of the Southern District. Additionally, many of the allegations in the complaints took place at CERAWeek in Houston.

Both districts and divisions are experienced in the oil and gas industry and class actions, and the Northern District in particular is highly experienced in antitrust matters, with its courts having overseen 131 antitrust actions since 2009. Both districts are also highly efficient with

median time to rule on motions to dismiss and motions for summary judgment below those of the Districts of New Mexico and Nevada.[19]

## <u>CONCLUSION</u>

For the foregoing reasons, if the Panel decides to centralize the cases, Defendants respectfully request consolidation and transfer of the Related Actions to the Midland Division of the Western District of Texas or, in the alternative, to the Dallas Division of the Northern District or the Houston Division of the Southern District of Texas.

Dated:  June 3, 2024

Respectfully submitted,
By:  */s/ John M. Taladay*
John M. Taladay
Christopher Wilson
Kelsey Paine
Megan Tankel
BAKER BOTTS L.L.P.
700 K Street N.W.
Washington, D.C. 20001-5692
Telephone: (202) 639-7909
john.taladay@bakerbotts.com
christopher.wilson@bakerbotts.com
kelsey.paine@bakerbotts.com

---

[19] The Northern District of Texas has a median time to rule on contested motions to dismiss of 105 days and a median time to rule on motions for summary judgment of 115 days. In the Southern District of Texas, the medians are 88 days for motions to dismiss and 111 days for motions for summary judgment. By contrast, the median times are 132 days for motions to dismiss and 166 for motions for summary judgment in New Mexico and 151 and 205 days, respectively, in Nevada. *See* Northern District of Texas, Motion Metrics Jan. 1, 2000 to Present, Courts and Judges, Lex Machina (last visited May 28, 2024); Southern District of Texas, Motion Metrics Jan. 1, 2000 to Present, Courts and Judges, Lex Machina (last visited May 2024); District of Nevada, Motion Metrics Jan. 1, 2000 to Present, Courts and Judges, Lex Machina (last visited May 28, 2024); District of New Mexico, Motion Metrics Jan. 1, 2000 to Present, Courts and Judges, Lex Machina (last visited May 28, 2024).

megan.tankel@bakerbotts.com

*Attorneys for Defendant*
*EOG RESOURCES, INC.*


By:      */s/ Boris Bershteyn*
Boris Bershteyn
Karen Hoffman Lent
Michael H. Menitove
Zachary C. Siegler
SKADDEN, ARPS, SLATE, MEAGHER &
  FLOM LLP
One Manhattan West
New York, NY  10001-8602
Telephone: (212) 735.3000
Facsimile: (917) 777-2000


Samuel G. Liversidge
Jay P. Srinivasan
S. Christopher Whittaker
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA  90071-3197
Telephone: (213) 229-7000
Facsimile: (213) 229-7520
sliversidge@gibsondunn.com
jsrinivasan@gibsondunn.com
cwhittaker@gibsondunn.com


*Attorneys for Defendants*
*PIONEER NATURAL RESOURCES*
*COMPANY and EXXON MOBIL*
*CORPORATION*

By:  */s/ Thomas B. Walsh, IV*
Thomas B. Walsh, IV
Thomas M. Melsheimer
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
Telephone: (212) 294-6700
tmelsheimer@winston.com
twalsh@winston.com

Jeffrey L. Kessler
Jeffrey J. Amato
WINSTON & STRAWN LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
jkessler@winston.com
jamato@winston.com

*Attorneys for Defendant*

*DIAMONDBACK ENERGY, INC.*

By:  */s/ Lawrence E. Buterman*
Lawrence E. Buterman
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Lawrence.Buterman@lw.com

Marguerite M. Sullivan
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Suite 1000
Washington, D.C. 20004
Telephone: (202) 637-2200
Marguerite.Sullivan@lw.com

*Attorneys for Defendant*
*CHESAPEAKE ENERGY CORPORATION*

By:  */s/ Kevin S. Schwartz*
Kevin S. Schwartz
David A. Papirnik
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, NY 10019
Telephone: (212) 403-1062
kschwartz@wlrk.com
*Attorneys for Defendant*
*HESS CORPORATION*

22

By: */s/ Devora W. Allon*

Devora W. Allon
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
devora.allon@kirkland.com
Telephone: 212-446-5967
Facsimile: 212-446-4900

Jeffrey J. Zeiger
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
jzeiger@kirkland.com
Telephone: 312-862-3237
Facsimile: 312-862-2200

*Attorneys for Defendant*
*OCCIDENTAL PETROLEUM*
*CORPORATION*

By: */s/ Christopher E. Ondeck*

Christopher E. Ondeck
Stephen R. Chuk
PROSKAUER ROSE LLP
1001 Pennsylvania Avenue NW
Washington, DC 20004
Telephone: (202) 416-6800
condeck@proskauer.com
schuk@proskauer.com

Kyle A. Casazza
PROSKAUER ROSE LLP
2029 Century Park East, Suite 2400
Los Angeles, CA 90067-3010
Telephone: (310) 284-5677
kcasazza@proskauer.com

Michael Burrage
WHITTEN BURRAGE
512 North Broadway Avenue, Ste 300
Oklahoma City, OK 73102
Telephone: (888) 783-0351
mburrage@whittenburragelaw.com

*Attorneys for Defendant*
*CONTINENTAL RESOURCES, INC*


By:  */s/ Michael W. Scarborough*
Michael W. Scarborough
Dylan I. Ballard
VINSON & ELKINS LLP
555 Mission Street, Suite 2000
San Francisco, CA 94105
Telephone: (415) 979–6900
Facsimile: (415) 651-8786
mscarborough@velaw.com
dballard@velaw.com

Craig P. Seebald
Stephen M. Medlock
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Telephone: (202) 639-6500
Facsimile: (202) 639-6604
cseebald@velaw.com
smedlock@velaw.com

*Attorneys for Defendant*
*PERMIAN RESOURCES CORPORATION*