**BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION**

|  |  |
|---|---|
| IN RE: SHALE OIL ANTITRUST LITIGATION | MDL NO. 3119 |

**CONSOLIDATED REPLY IN SUPPORT OF PLAINTIFF FOOS, ET AL.'S MOTION TO
TRANSFER AND CENTRALIZE RELATED ACTIONS FOR CONSOLIDATED OR
COORDINATED PRETRIAL PROCEEDINGS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................ii

INTRODUCTION ......................................................................................................................... 1

ARGUMENT ................................................................................................................................ 3

    I.     CENTRALIZATION UNDER 28 U.S.C. § 1407 IS SUPERIOR TO SIMPLE TRANSFER OF VENUE UNDER 28 U.S.C. § 1404(A) AS NEW RELATED ACTIONS ARE BEING FILED AND ALTERNATIVES TO CENTRALIZATION WOULD ENGENDER DELAY .............................................................................................................................. 3

    II.    RELATED ACTIONS SHOULD BE CENTRALIZED IN NEW MEXICO RATHER THAN IN TEXAS...................................................................................................................... 3

        A.   Texas is not the factual nexus and center of gravity ....................................................... 4

        B.   New Mexico is a far more convenient and accessible forum than Texas........................ 6

        C.   Movants' objections against transfer to the Western District of Texas apply equally to transfer to the Northern District or the Southern District of Texas................................... 8

    III.   NEW MEXICO IS PREFERABLE TO THE DISTRICT OF NEVADA....................... 9

CONCLUSION ............................................................................................................................ 11

## INTRODUCTION

Plaintiffs Matthew E. Foos, Andrew A. Hund, Michael B. Ackerman, Jarrod Johnson, and Mackey and Sons Inc. ("Movants") respectfully submit this consolidated reply in support of their Motion to Transfer and Centralize Related Actions for Consolidated or Coordinated Pretrial Proceedings (Dkt. 1; the "Motion").

Only one potential transferee forum is a natural fit for this litigation: the District of New Mexico. All Plaintiffs agree, with the 17 plaintiffs in the nine actions consolidated in the District of Nevada (the "Nevada Plaintiffs") concurring in the alternative that transfer of the Related Actions[1] to New Mexico is appropriate.[2]

---

[1] The Related Actions consist of: (i) the nine Nevada cases, which, prior to their consolidation in *Rosenbaum v. Permian Resources, et. al.*, 2:24-cv-00103-MMD-MDC (D. Nev.) filed January 12, 2024 ("Rosenbaum"), included: *Andrew Caplen Installations LLC v. Permian Resources Corp, et al.*, No. 2:24-cv-00150-MMD-MDC (D. Nev.), filed January 22, 2024; *These Paws Were Made For Walkin' LLC v. Permian Resources Corp, et al.*, No. 2:24-cv-00164-MMD-MDC (D. Nev.), filed January 24, 2024; *Courtmanche v. Permian Resources Corp. et al*, No. 2:24-cv-00198-MMD-MDC (D. Nev.), filed January 29, 2024; *Mellor v. Permian Resources Corp. et al*, No. 2:24-cv-00253-MMD-MDC (D. Nev.), filed February 6, 2024; *Santillo v. Permian Resources Corp. et al*, No. 2:24-cv-00279-MMD-MDC (D. Nev.), filed February 8, 2024; *Beaumont v. Permian Resources Corp. et al*, No. 2:24-cv-00298-GMN-MDC (D. Nev.), filed February 12, 2024; *MacDowell v. Permian Resources Corp. et al,* No. 2:24-cv-00325-MMD-MDC (D. Nev.), filed February 15, 2024; *Western Cab Co. v. Permian Resources Corp. et al*, No. 2:24-cv-00401-MMD-MDC (D. Nev.), filed February 28, 2024 (collectively, the "Nevada Cases"); and (ii) two New Mexico cases, including: *Foos v. Permian Resources, et al.*, No. 1:24-cv-00361 (D.N.M.) filed April 15, 2024; and *Brown v. Permian Resources, et al.*, No. 1:24-cv-00430 (D.N.M.) filed May 6, 2024 (*Foos* and *Brown* together, the "New Mexico Cases"). Since the filing of the Motion on May 8, 2024, Movants have filed two new related cases in New Mexico, *i.e. Castillo Construction and Management, LLC et al v. Permian Resources Corp. et al*, No. 1:24-cv-00563 (D.N.M.) filed June 4, 2024, and *Overstreet v. Permian Resources Corp. et al*, No. 1:24-cv-00583 (D.N.M.) filed June 9, 2024.

[2] Nevada Plaintiffs' Response Memorandum in Support of Transfer and Centralization (Dkt. 52) (the "Nevada Plaintiffs' Response"). Interested parties filed separate responses whereby they joined the Nevada Plaintiffs' Reponse. *See* Plaintiff These Paws Were Made For Walkin' LLC's Interested Party Response to Motion for Transfer (Dkt. 54), Plaintiffs Andrew Caplen Installations, LLC; Edward Allegretti d/b/a Alfred Auto Center; and Western Cab Company's Interested Party Response to Motion to Transfer (Dkt. 55); Plaintiffs Barbara and Phillip MacDowell's Interested Party Response to Motion for Transfer (Dkt. 56); Plaintiffs Brian Courtmanche, Laura Faber, Josselyn's Getaway Log Cabins LLC, Patricia Mancieri, and David Silver's Interested Party Response to Motion for Transfer (Dkt. 57); Plaintiff John Mellor's Interested Party Response to Motion for Transfer (Dkt. 58); Plaintiff Richard Beaumont's Interested Party Response to Motion for Transfer (Dkt. 59); Plaintiff Laurie Olsen Santillo's Interested Party Response to Motion for Transfer (Dkt. 60).

While Defendants would prefer transfer to the Western District of Texas, Midland Division[3] —a venue at some remove and certain inconvenience from the Parties and their counsel—there is no doubt that transfer to the District of New Mexico would address many of the concerns Defendants have raised in Nevada and before this Panel.

The Defendants' arguments are simply not persuasive. First, and contrary to Defendants' position, centralization under 28 U.S.C. § 1407 is superior to transfer under § 1404 because new potentially related cases might be filed, and the Panel might be asked to revisit the question of centralization later at the expense of efficient resolution of the case.

Second, no case is currently pending in the Midland, Texas, courthouse Defendants propose. The rare circumstances attending transfers to districts where no Related Case is pending are simply not present in this case. The District of New Mexico is a more convenient and accessible forum than the Western District of Texas given its accessibility to the major US cities and favorable docket conditions.

Third, the location of Defendants' corporate headquarters, certain production facilities, and certain offices in Texas is not dispositive. New Mexico bears a geographical and factual nexus to the dispute, sharing the most important shale play in the nation (the Permian Basin) with Texas.  It is likely that witnesses, documents, and other evidence may be found in the district. And it is a short distance from Defendants' headquarters and counsel. Further, it bears noting that the only plaintiffs residing in the Permian Basin are the plaintiffs in the New Mexico Cases.[4]

The District of New Mexico is likewise preferable to the District of Nevada as a transferee forum. The District of Nevada has no clear link to the matters at issue in the Related Actions other than the residence of two named plaintiffs.

For all these reasons, the Panel should order centralization in the District of New Mexico.

---

[3] Defendants' Response to Motion to Transfer (Dkt. 53) (the "Defendants' Response").
[4] Plaintiffs in the recently filed New Mexico cases are also affiliated with New Mexico: plaintiff in the *Castillo* case is a New Mexico corporation with its principal place of business in Albuquerque, New Mexico. Plaintiff in the *Overstreet* case is a citizen of New Mexico and resides in Albuquerque.

**ARGUMENT**

I. **CENTRALIZATION UNDER 28 U.S.C. § 1407 IS SUPERIOR TO SIMPLE TRANSFER OF VENUE UNDER 28 U.S.C. § 1404(A) AS NEW RELATED ACTIONS ARE BEING FILED AND ALTERNATIVES TO CENTRALIZATION WOULD ENGENDER DELAY**

Defendants state that a transfer under 28 U.S.C. § 1404 to the Midland Division of the Western District of Texas, which they requested in the Nevada Cases and plan to request in the New Mexico Cases, offers a "viable path to transfer to the appropriate and most convenient venue." Defendants' Response at 7. Yet, they do not explain how this would work under the circumstances of the Related Case, or why it would be preferable to centralization under section 1407.

Movants understand that new cases will be filed in New Mexico and elsewhere. Movants believe that the fact that additional cases are being filed means that centralization under § 1407 is superior to transfer under § 1404. Pursuing alternatives to centralization can result in delay in the resolution of the core questions of this case. *See, e.g., In re: AndroGel Prod. Liab. Litig.*, 24 F. Supp. 3d 1378, 1379 (J.P.M.L. 2014) (rejecting alternatives to centralization because they "would delay the resolution of the common core issues in this litigation"); or *In re: Edward H. Okun I.R.S. |1031 Tax Deferred Exch. Litig.*, 609 F. Supp. 2d 1380, 1381 (J.P.M.L. 2009) ("[D]enial of either of Wachovia's transfer motions could engender delay, as the Panel may be asked to revisit the question of Section 1407 centralization. Centralizing these actions now under Section 1407 should streamline resolution of this litigation to the overall benefit of the parties and the judiciary.").

Given the number of Related Actions and diversity of existing venues, centralization under section 1407 is not only appropriate, it is preferable.

II. **RELATED ACTIONS SHOULD BE CENTRALIZED IN NEW MEXICO RATHER THAN IN TEXAS**

Defendants argue the factors that the Panel considers in determining the appropriate transferee district "overwhelmingly weigh[] in favor of Texas." Defendants' Response at 9. They argue that (A) Texas is the factual nexus and center of gravity, as (i) all Defendants are either headquartered in Texas

3

or have major operations in Texas, (ii) the majority of Defendants' employees and executives are based in Texas, and (iii) most individuals identified in the Complaints, including third-party witnesses, reside in Texas (Response at 9-15); that (B) Texas is a convenient and accessible forum (Response at 15-16); and that (C) all Defendants have chosen Texas as their first choice forum (Response at 16-17). Movants believe that the discussed factors speak in favor of transfer to the District of New Mexico rather than the Western District of Texas.

### A.      Texas is not the factual nexus and center of gravity

Defendants argue that the center of gravity of the case is in Texas because that is where the corporate headquarters of most Defendants are located. Defendants' Response at 3-7; Ex. A ¶ 3; Ex. B ¶¶ 3–4; Ex. C ¶ 2; Ex. D ¶ 3; Ex. E ¶ 3; Ex. F ¶ 2; Ex. G ¶ 2.  Defendants' argument is too simplistic. The alleged cartel may not have been entered into at the places where the "regular" production decisions were made, where the shale oil itself was extracted, or where most of Defendants' employees work. Movants are not able to identify all the places where the Defendants' executives met, or all the avenues that they used to communicate. What is certain is that given the nature of the cartel and involvement of OPEC, it is reasonable to assume that Defendants have met and discussed pricing and production volumes at various locations, both within and outside the United States, including New Mexico and Texas. The complaint by the Federal Trade Commission from May 2024 confirms that hypothesis.[5] For example, the FTC complaint describes a March 2017 dinner at an undisclosed location where the representatives of US shale producers and OPEC met,[6] as well as other in-person meetings of Mr. Sheffield of Pioneer and other people to coordinate output reductions.[7] The FTC complaint also suggests that some conversations involving Mr. Sheffield were conducted through WhatsApp,[8] or text

---

[5] Federal Trade Commission, Complaint in the Matter of Exxon Mobil Corporation, *available at https://www.ftc.gov/system/files/ftc_gov/pdf/2410004exxonpioneercomplaintredacted.pdf* (last visited June 7, 2024).

[6] *Id.* ¶ 35.

[7] *Id.* ¶ 6.

[8] *Id.* ¶ 5.

messages.[9] These observations further challenge Defendants' effort to localize all the cartel negotiations in Texas, since at least some of them were likely conducted by phone or text messages.

Defendants' chart identifying the location of the executives mentioned in the Movants' complaint loses its punch for a similar reason. *See* Defendants' Response at 14-15. From an evidentiary standpoint, the location of Defendants' officials might have some relevance if Defendants specified whether those officials could and likely would be called as witnesses, or whether they possess relevant documents. Without specifying which aspects of the case those executives can testify to, Movants cannot evaluate whether they are, in fact, a source of potential evidence or not. Indeed, Defendants themselves concede that the individuals identified in the Movants' complaint may not necessarily be subject to testimony or interrogation. Defendants' Response at 14, fn. 12.

Finally, the Panel often transfers cases into districts other than where defendants' corporate headquarters are located. *See, e.g.*, *Stryker Orthopaedics*, 249 F. Supp. 3d 1353, 1356 (J.P.M.L. 2017) (transferring cases to the District of Massachusetts rather than the District of New Jersey, the location of defendant's headquarters and defendant's preferred district, when five cases were already pending before a judge in "an accessible transferee forum for this litigation, which involves a product that was distributed nationwide"); or *In re Ethicon Physiomesh Flexible Composite Hernia Mesh Prods. Liab. Litig.*, 254 F. Supp. 3d 1381, 1383 (J.P.M.L. 2017) (centralizing litigation in the Northern District of Georgia over the District of New Jersey, despite New Jersey being the location of defendant's headquarters). Moreover, modern discovery efficiencies have minimized the importance of the geographical location of witnesses and documents.[10] The Related Actions are easily distinguished from cases involving airplane crashes[11] or mass torts[12] which require collection of evidence at the scene of an accident.

---

[9] *Id.* ¶¶ 6, 31.

[10] *See, e.g., Griffin Cap. Co., LLC v. Essential Props. Realty Tr., Inc.*, No. 1:18-CV-4255-MHC, 2019 WL 5586547, at *6 (N.D. Ga. Jan. 18, 2019).

[11] *See, e.g., In re: Air Crash at San Francisco, Cal.*, 987 F. Supp. 2d 1378 (J.P.M.L. 2013).

[12] *See, e.g., In re Terrorist Attacks on September 11, 2001*, 295 F. Supp. 2d 1377 (J.P.M.L. 2003).

**B.     New Mexico is a far more convenient and accessible forum than Texas**

The ease of travel is an important factor in this regard. The District of New Mexico is "geographically central and accessible." Motion at 8. This is illustrated by much more convenient travel itineraries from the major US cities. As explained in detail in the Motion and expanded on in the Nevada Plaintiffs' Response, planes departing from Midland only land in six cities, i.e., Dallas-Fort Worth, Phoenix, Austin, Houston, Denver, and Las Vegas. Motion at 10; the Nevada Plaintiffs' Response at 15-16. To get into other destinations, travelers need to make at least one stop. This is in sharp contrast with the Albuquerque airport, which offers nonstop flights to the nation's key transportation hubs, including Seattle, San Francisco, Los Angeles, San Diego, Denver, Dallas, Houston, Chicago, New York, Washington, DC, and Atlanta. *Id.*

Similarly, a less burdened docket promises a more convenient forum. *See, e.g., In re Corn Derivatives Antitrust Litigation*, 486 F. Supp. 929, 931 (J.P.M.L. 1980). As noted by the Nevada Plaintiffs, the District of New Mexico has only two MDL's currently pending and those with a mere 17 and 2 active cases,[13] while all the three Texas districts have more total pending case and more cases per judge than the District of New Mexico.[14] The Nevada Plaintiffs' Response at 16.

Defendants argue that the Panel should also prefer Texas over other venues because all Defendants have chosen Texas as their first-choice forum. Defendants' Response at 16. Movants' choice is allegedly not that important because there will be more Plaintiffs and there will be disagreements among them as to the best forum. Defendants' Response at 17.  The fact that Movants' have not chosen Texas as their preferred venue has a pragmatic reason: indirect antitrust claims are not allowed under Texas law. *See Abbott Labs., Inc. (Ross Labs. Div.) v. Segura*, 907 S.W.2d 503, 505 (Tex.

---

[13]   *See*  https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-June-3-2024.pdf (last visited June 7, 2024).

[14] *See* U.S. District Courts, *United States District Courts – National Judicial Caseload Profile, 12 month period ending                     December                     31,                     2023*, https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2023_0.pdf (last visited June 7, 2024).

1995) (applying *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977) to bar indirect purchaser claims under Texas antitrust and consumer protection legislation). Transfer to any of the Texas's federal district courts would deprive every single plaintiff in the Related Actions of their preferred venue choice and shift the burden and inconvenience of litigation from Defendants who are corporations with nationwide operations and generous budgets, onto plaintiffs, who are individuals and small businesses that do not reside in Texas. It would also result in a transferee court that does not regularly address indirect purchaser claims deciding issues of significant import to plaintiffs who could not have brought their cases in Texas.

Defendants refer to the *Body Science* case to suggest that the Panel should transfer the case to a district preferred by all Defendants even though Movants sought a different district. Defendants' Response at 16 referring to *In re: Body Science LLC Patent Litig.*, 883 F. Supp. 2d 1344 (J.P.M.L. 2012). But in that case, the *Body Science* plaintiffs alternatively suggested, at one point in litigation, the transfer of all actions to the district that was later sought as a transferee district by defendants. The Panel found that given previous support, the plaintiffs' subsequent objections to centralization were not persuasive. *Id.*

Defendants also rely on *In re Nine W. LBO Sec. Lit.* as support for transfer devoid of any pending Related Action. Defendants' Response at 11 referring to *In re Nine W. LBO Sec. Litig.*, 464 F. Supp. 3d 1383 (J.P.M.L. 2020). That case is, again, distinguishable. In *In re Nine W. LBO Sec. Lit.*, Nine West filed for bankruptcy in the Southern District of New York, "which involved discovery in New York." *Id.* at *1385. Here, there are no related, administrative or bankruptcy, proceedings underway in Texas, which could provide an advantage from evidentiary perspective.

Contrary to Defendants' argument, the Panel has historically been reluctant to transfer a case to a district where no Related Action is pending. *See, e.g., In re Air Crash Disaster near Papeete, Tahiti, on July 22, 1973*, 397 F. Supp. 886, 887 (J.P.M.L. 1975); or *In re TLI Commc'ns. LLC Patent Litig.*, 26 F. Supp. 3d 1396, 1397 (J.P.M.L. 2014) (declining to transfer cases to defendants' chosen forum where no actions

7

were pending). The *Sundstrand Data Control* case referred to by Defendants is an exception from that general rule and can be factually distinguished. Defendants' Response at 13 referring to *In re Sundstrand Data Control, Inc. Pat. Litig.*, 443 F. Supp. 1019 (J.P.M.L. 1978). In that case, the specific circumstance why the Panel decided to transfer the case to a district in which no related action was pending was that the Panel believed that discovery would need to be done at a physical location of a Boeing factory. *Id.* at *1021. In addition, there was a parallel state case and the Panel saw significant efficiencies in being able to coordinate between the federal actions and the related action pending in a Washington state court. *Id.* No such considerations are relevant in the present case.

### C. Movants' objections against transfer to the Western District of Texas apply equally to transfer to the Northern District or the Southern District of Texas

Defendants suggest that if the Panel does not agree with the transfer to the Midland Division of the Western District of Texas, the Related Actions should alternatively be transferred either to the Dallas Division of the Northern District of Texas, or the Houston Division of the Southern District of Texas. Defendants' Response at 19.  For many of the reasons described above, transfer to neither venue is appropriate. Here, Related Actions are pending in the District of New Mexico, a venue with a demonstrable tie to the allegations in dispute. Just as important, certain Plaintiffs have chosen New Mexico as an appropriate forum, which under the circumstances should be given appropriate consideration. Not a single plaintiff has filed in Texas—or argued that transfer to a Texas district is appropriate.

In addition to the fact that several Defendants maintain operations in Midland, Defendants emphasize that the Midland Division is exceptionally well positioned, both capacity- and expertise-wise, to take on the case. Defendants' Response at 18. They also point to the "efficiency" of Judge David Counts of the Midland Division, who allegedly issues rulings on motions for summary judgment in much shorter time than Judge Garcia or Chief Judge Du. *Id.* Movants believe that this comparison is misleading as it does not factor in the nature and complexity of any relevant case. Without further

differentiation this metric suggests that Judge Counts is simply a more "efficient" judge in general. The Panel has rejected a similar line of argument. In one case a party argued that the general expertise of the judges of the District of Columbia warranted selection of that district over other potential transferee courts. The Panel found this argument "wholly without merit." *In re Tenneco Inc. Securities Litigation*, 426 F. Supp. 1187, 1189 (J.P.M.L. 1977).

## III.    NEW MEXICO IS PREFERABLE TO THE DISTRICT OF NEVADA

The Nevada Plaintiffs argue that the Related Actions should be centralized in the District of Nevada. The District of Nevada has no clear link to the matters at issue in the Related Actions, other than the residence of two named plaintiffs. Nevada is not part of the Permian Basin, which is by far the most important and productive shale oil play in the country. Motion at 8-9.

Centralization in the District of New Mexico offers a compelling compromise between Las Vegas and Midland. The Panel acknowledges that some venues are more suitable than others if they are in the center of a "region" common to the Related Actions. For example, in one docket the Panel selected the District of Massachusetts as the transferee district in part because it was centrally located to the cases pending generally "in the eastern part of the United States." *In re Columbia University Patent Litigation*, 313 F. Supp. 2d 1383, 1385 (J.P.M.L. 2004). The advantage of a geographically central location increases as the number of actions increases.

The Panel also does not have to centralize cases in the court where most cases are pending, as the Nevada Plaintiffs recommend. The Nevada Plaintiffs' Response at 6. For example, in one docket, the Panel transferred the case to the Western District of North Carolina, where two actions of thirteen were pending, despite the fact that more actions (three), were pending in the District of Arizona, Central District of California, and Northern District of Illinois. *In re Gardasil Prod. Liab. Litig.*, 619 F. Supp. 3d 1356 (J.P.M.L. 2022).

The Nevada Plaintiffs also point out that the first of the Related Actions was filed in the District of Nevada, which makes it a preferrable forum. The Nevada Plaintiffs' Response at 6. Yet, the Panel

readily transfers actions to districts other than to those where the action was commenced first. *See, e.g., In re Rembrandt Technologies, LP, Patent Litigation*, 493 F. Supp. 2d 1367 (J.P.M.L. 2007). This is not a case where the first-filed case is most advanced in terms of case management. *See* David F. Herr, MULTIDISTRICT LITIGATION MANUAL, § 6:8 (2022 ed.). Even though the Nevada Cases were filed in January 2024, the current presiding judge Chief Judge Miranda M. Du has been assigned to the case only after judge Gloria M. Navarro recused herself from the case on April 4, 2024. *See Rosenbaum*, 2:24-cv-00103, Dkt. 162. The first of the New Mexico cases was filed on April 15, 2024, and Judge Matthew L. Garcia has been assigned to that case from the very beginning. *See Foos v. Permian Resources, et al.*, No. 1:24-cv-00361, Dkt. 1. Thus, both presiding judges have had similar time frame to get acquainted with the case.

Finally, the Nevada Plaintiffs acquiesce to centralization in the District of New Mexico in the alternative. The Panel has transferred cases to districts supported by parties "in the alternative." *See, e.g., In re Hair Relaxer Marketing, Sales Practices, and Products Liability Litigation*, 655 F. Supp. 3d 1374 (J.P.M.L. 2023) (all plaintiffs indicated in their filings or at oral argument that they support or do not oppose transfer to selected district, at least in the alternative); *In re T-Mobile Customer Data Security Breach Litigation*, 576 F. Supp. 3d 1373 (J.P.M.L. 2021) (centralizing to district supported by defendants and, in alternative, by several plaintiffs, including movants); *In re FEMA Trailer Formaldehyde Products Liability Litigation*, 528 F. Supp. 2d 1350 (J.P.M.L. 2007). As long as a party "acquiesces,"[15] or simply does not "oppose,"[16] the Panel considers an alternative forum as an acceptable option.

---

[15] *In re America Online Spin-Off Accounts Litigation*, 310 F. Supp. 2d 1369 (J.P.M.L. 2004).

[16] *In re Seroquel Products Liability Litigation*, 542 F. Supp. 2d 1366 (J.P.M.L. 2008); *In re TJX Companies, Inc.*, 505 F. Supp. 2d 1379 (J.P.M.L. 2007); *In re Static Random Access Memory (SRAM) Antitrust Litigation*, 473 F. Supp. 2d 1384 (J.P.M.L. 2007) (favored or not opposed by most plaintiffs and all defendants); *In re Isolagen, Inc., Securities & Derivative Litigation*, 416 F. Supp. 2d 1366 (J.P.M.L. 2006) (nearly all parties favor or do not oppose district); *In re Rhodia S.A., Securities Litigation*, 398 F. Supp. 2d 1359 (J.P.M.L. 2005); *In re Plastics Additives Antitrust Litigation (NO. II)*, 374 F. Supp. 2d 1351 (J.P.M.L. 2005); *In re UICI "Ass'n Group" Ins. Litigation*, 305 F. Supp. 2d 1360 (J.P.M.L. 2004). *See also In re Helicopter Crash Near Wendle Creek, British Columbia on August 8, 2002*, 350 F. Supp. 2d 1358 (J.P.M.L. 2004); *In re Air Crash Near Denver, Colo. on October 3, 1969*, 339 F. Supp. 415, 416 (J.P.M.L. 1972) (no party contested transferee district).

**CONCLUSION**

The District of New Mexico offers something for all Parties: ease of access; a factual and geographic nexus to the underlying claims in dispute; proximity to witnesses and evidence; multiple, pending Related Actions; and support by all Plaintiffs. The District of New Mexico also retains many experienced jurists, including Judge Matthew Garcia, who should have the opportunity to manage and aid in the resolution of a case with both local and national importance. Movants respectfully request that the Panel transfer and promptly centralize the Related Actions before the Hon. Matthew L. Garcia of New Mexico (Albuquerque) or another judge in the district.

Dated: June 10, 2024                                    Respectfully submitted,

                                                        */s/ Warren T. Burns*
                                                        Warren T. Burns
                                                        Daniel H. Charest
                                                        BURNS CHAREST LLP
                                                        900 Jackson Street, Suite 500
                                                        Dallas, TX 75202
                                                        Telephone.: (469) 904-4550
                                                        wburns@burnscharest.com
                                                        dcharest@burnscharest.com

                                                        Korey Nelson
                                                        BURNS CHAREST LLP
                                                        365 Canal Street, Suite 1170
                                                        New Orleans, Louisiana 70130
                                                        Telephone: (504) 799-7845
                                                        knelson@burnscharest.com

                                                        Rex A. Sharp
                                                        Isaac L. Diel
                                                        W. Greg Wright
                                                        Brandon C. Landt
                                                        Hammons P. Hepner
                                                        SHARP LAW LLP
                                                        4820 W. 75th Street
                                                        Prairie Village, KS 66208
                                                        Telephone: (913) 901-0505
                                                        rsharp@midwest-law.com
                                                        idiel@midwest-law.com
                                                        gwright@midwest-law.com

blandt@midwest-law.com
hhepner@midwest-law.com

Steven N. Williams
Kai'Ree K. Howard
STEVEN WILLIAMS LAW, P.C.
201 Spear Street, Suite 1100
San Francisco, California 94105
Telephone: 415-697-1509
swilliams@stevenwilliamslaw.com
khoward@stevenwilliamslaw.com

Christopher A. Dodd
DODD LAW OFFICE, LLC
500 Marquette Avenue NW, Suite 1330
Albuquerque, New Mexico 87102
Tel: (505) 475-2932
chris@doddnm.com

***Attorneys for Plaintiffs Matthew E. Foos, Andrew A. Hund, Michael B. Ackerman, Jarrod Johnson, and Mackey and Sons Inc.***